Thomas A. JOELSON, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 83–85.

Supreme Court of Wyoming.

Jan. 4, 1984.

Robert J. O'Neil of Thomas, O'Neil & Padget, Gillette, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen. and Margaret M. White, Asst. Atty. Gen., for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROONEY, Chief Justice.

The appellant in this case was convicted in justice of the peace court of a violation of § 31–5–233, W.S.1977, Cum.Supp.1983, driving while under the influence of intoxicants. He appealed to district court, where his conviction was upheld. Appellant then appealed to this court. We affirm.

The issue on appeal, as worded by the appellant, is as follows:

"[W]hether the chemical analysis of the appellant's blood introduced at trial was erroneously admitted into evidence at the appellant's trial on an alleged violation of Wyoming Statute Section 31–5–233 as the State failed to comply with the foundational prerequisites of Wyoming Statute Section 31–6–105(b), said error requiring the reversal of the appellant's conviction."

Two deputy sheriffs traveling south on Highway 59, in the dark of the night, noticed a vehicle in the northbound lane weaving back and forth rapidly with the headlights shining into the oncoming lane and then off to the right. The deputy sheriffs stopped the vehicle and asked the driver, the appellant, to step out. In attempting to get out of the car, the appellant almost fell out; in the words of one of the officers, "[i]t looked like he just forgot to bring his legs out of the vehicle when he tried to exit the vehicle." The appellant asked the officers why he had been stopped, and after the answer was given that he was driving poorly he asked the same question again. After observing that he had bloodshot eyes and smelled of alcohol, the officers then gave the appellant four field sobriety tests. The tests consisted of walking heel to toe four steps forward and six steps backward, of counting one-two-three-four and then back to one while touching his fingertips with his thumbs, of reciting the alphabet, and finally of standing on one leg for a few seconds. The appellant was unable to perform any of these tests correctly.

At this point, the appellant was arrested and taken to the sheriff's office where he agreed to a blood test. However, after being taken to the hospital emergency room, he refused to sign the consent form for the test, and so was taken back to the sheriff's office whereupon he again changed his mind and agreed to the blood test. He was taken back to the hospital where the blood sample was taken. Tests determined his blood alcohol level to be at .20.

The testimony at trial indicated that the appellant had gone from Gillette to Casper to see his son who was experiencing some kind of health problem. However, conflict between the appellant and his ex-wife apparently interfered with his ability to get in contact with his son, and he went to a friend's house where he consumed an undetermined amount of whiskey. Around 11:00 p.m., the appellant headed back to Gillette. Approximately an hour later he stopped at a guard station at the Naval Reserve Station. The guard there made a report of the incident and noted in the report that:

" * * * As Joelson appeared intoxicated and in no condition to drive a vehicle, I told Joelson to park his vehicle and I would get someone to give him a ride. * * * As there were no motel rooms * * * Joelson agreed to sleep in his vehicle until he sobered up. At approximately 0400 hours, Joelson woke up. * * * "

The appellant left the station around 4:00 a.m., and was subsequently arrested at approximately 5:30 a.m.

The appellant argues that his conviction in the justice of the peace court was erroneous because of the introduction, over objection, of the results of the chemical analysis of his blood test. The argument is based on § 31–6–105(b), W.S.1977, which reads as follows:

"(b) When a person shall submit to a blood test at the request of a law enforcement officer under the provisions of this

act [§§ 31–6–101 to 31–6–106], only a physician, registered nurse, or a qualified clinical or laboratory technician may withdraw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of breath specimens."

The appellant's argument is that no evidence was introduced at trial that the blood sample was withdrawn by a "physician, registered nurse, or a qualified clinical or laboratory technician," and that without such evidence, the results of said blood sample are inadmissible for lack of reliability. The appellee relies, in opposition, on the facts that the appellant was taken to the emergency room at the Campbell County Memorial Hospital, and that on the form from the Blood/Urine Alcohol Collection Kit, a Theresa Hansen certified that she drew the blood samples from the appellant, and after her signature, in a box labeled "title," are written the initials RN. From these facts the State would have us infer that Theresa Hansen is a registered nurse, and thus one of the persons authorized by statute to "withdraw blood for the purpose of determining the alcohol content therein." Thus, the State argues that there was no abuse of discretion at the lower court level in allowing the introduction of the appellant's blood alcohol level, which in turn raised a statutory presumption of intoxication. Section 31–5–233(b), W.S.1977.

Appellant did not object to State's Exhibit No. 3, which is the form from the Blood/Urine Alcohol Collection Kit, and this exhibit was properly received into evidence, as a record of regularly conducted activity under Rule 803(6), W.R.E.[1] After it was properly admitted into evidence, the material contained in the exhibit could be accepted as true or false by the trier of fact. The relevant portion of Exhibit No. 3 is as follows: "I hereby certify that I drew blood samples from the above person. Signed _____ Theresa Hansen _____ Title RN _____."

■ Appellant argues that there is no proof that Theresa Hansen meets the requirements of § 31–6–105(b), W.S.1977. We disagree. The letters RN, placed in the space provided for "title," are defined as "1) registered nurse 2) Royal Navy," Webster's New Collegiate Dictionary (G. & C. Merriam Co. 1979). We do not believe that Theresa Hansen was indicating that she was a member of the Royal Navy.

"It is a general habit and custom with officers to use parts of words or letters to indicate the official character in which they are acting, and this has become a matter of such general notoriety that judicial notice is taken of the meaning of such abbreviations. * * *" 1 Am.Jur.2d, Abbreviations, § 5.

"Abbreviations are recognized as part of the English language, and the courts will take judicial notice of all well-known and widely recognized and commonly used abbreviations as they are understood by the majority of the people under the same circumstances." 29 Am.Jur.2d, Evidence, § 91.

As Theresa Hansen was working in the emergency room of the Campbell County Memorial Hospital, and as it is generally recognized by the majority of the people that the initials RN are an abbreviation for registered nurse, we hold that the trier of fact could believe from all the evidence that Theresa Hansen was a registered nurse.

The State introduced evidence, Exhibit No. 3, that the blood was taken by a regis-

1. Rule 803(6), W.R.E., provides:

"(6) *Records of regularly conducted activity.* —A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

tered nurse, and the appellant introduced nothing to impeach or contradict this evidence. Taking the evidence in a light most favorable to the prevailing party and resolving all conflicts in the evidence for the appellee, *Gray v. Fitzhugh,* Wyo., 576 P.2d 88, 89 (1978), the trial court's ruling that the evidence was taken in compliance with § 31–6–105(b), supra, and its admission of the results of the blood test into evidence were proper.

■ Even were we to hold otherwise, appellant has not made a showing that the admittance of his blood alcohol level was other than harmless error. As we have said before:

> " * * * While a large portion of [appellant's] brief is devoted to the claimed error of admitting such evidence over appropriate objection, we remind counsel that in order to obtain a reversal here on such ground, even though his complaint might be well founded, he must go further and demonstrate that such claimed error prejudiced the substantial rights of plaintiff. Rule 72(g), W.R.C.P.; and *Butcher v. McMichael,* Wyo., 370 P.2d 937, 939. On the record we conclude that this has not been accomplished." *Willis v. Asbury Transportation Co.,* Wyo., 386 P.2d 934, 937 (1963).

As already noted, there is more than ample evidence in the record upon which to uphold the verdict of the trier of fact without reliance on the results of the blood test.

Affirmed.