*340 JUSTICE HARRISON
delivered the Opinion of the Court.
Defendant and appellant, Beth Decker, was convicted of driving under the influence in the Tenth Judicial District, Fergus County, Montana. Beth Decker appeals, and we affirm.
The sole issue before this Court is whether the District Court erred in allowing into evidence testimony of a forensic scientist regarding the appellant’s blood alcohol content.
On April 12, 1990, after being notified via radio of a single car accident in Lewistown, Montana, Officer Moring of the Lewistown Police Department arrived at the scene and found the appellant, Beth Decker. She admitted to being the driver of the car. As a result of the accident, she received a split lip which needed medical attention. The officer took her to the police station since she initially refused medical attention so she could see the injury. After viewing the injury, the appellant changed her mind and desired medical treatment. While at the police station, the officer procured the necessary paperwork for a blood withdrawal since there was evidence of a possible DUI; he perceived the smell of alcohol on the appellant and in the car. He transported the appellant to the hospital and, upon arrival, the nurse on duty summoned the emergency room doctor. The officer observed the doctor’s activity and then properly administered the implied consent form. Subsequently, the officer presented the blood test request form to the nurse and remained while the nurse drew the appellant’s blood, correctly sealed the sample, and initialed the seal. The officer took possession of the sample and sent it to the Missoula Crime Lab via certified mail with a completed “alcohol analysis request form” enclosed. The results of the blood analysis revealed a blood alcohol content level higher than the legal limit.
Procedural safeguards for drawing blood for the purpose of determining alcohol content are set forth in § 61-8-404(l)(b)(iii), MCA (1989), which states that “if the test was on a blood sample, the person withdrawing the blood must have been competent to do so under 61-8-405(1).” Section 61-8-405(1), MCA (1989), provides that: “Only a physician or registered nurse or other qualified person under the supervision and direction of a physician or registered nurse acting at the request of a peace officer may withdraw blood for the purpose of determining alcoholic content.”
The issue on appeal revolves around whether “D. Hartman,” the hospital personnel who withdrew the appellant’s blood, was identifiable as a person qualified to do so.
*341 A similar situation arose in Wyoming.
Joelson v. State (Wyo. 1984), 674 P.2d 229. In Joelson, the appellant argued that no evidence was introduced that the blood was taken by a registered nurse, physician or other qualified personnel. The nurse in Joelson properly collected the blood sample and completed paperwork which included her designation as an RN. The Wyoming court reasoned that
“The letters RN, placed in the space provided for ‘title,’ are defined as T) registered nurse 2) Royal Navy,’ Webster’s New Collegiate Dictionary (G. & C. Merriam Co. 1979). We do not believe that Theresa Hansen was indicating that she was a member of the Royal Navy ... [she] was working in the emergency room of the Campbell County Memorial Hospital, and as it is generally recognized by the majority of the people that the initials RN are an abbreviation for registered nurse, we hold that the trier of fact could believe from all the evidence that Theresa Hansen was a registered nurse.”
Joelson, 674 P.2d at 231.
The Wyoming court admitted the blood test results into evidence and stated that “the appellant introduced nothing to impeach or contradict this evidence.” Joelson, 674 P.2d at 232.
The situation in the case at bar is similar. The record indicates that the officer took the appellant to the hospital where they were greeted by a nurse. The nurse summoned the doctor and, after an examination of the appellant’s injury, a blood sample was obtained by the nurse. Proper documentation and paperwork were completed. At trial, two forms were admitted into evidence without objection. First, the blood test request form which indicated the nurse’s name as follows:
“D. Hartman
“(Physician, Registered Nurse, etc.)
“Second, the alcohol analysis request appeared as follows:
“Hartman
“(Physician, Nurse, Med. Tech)”
In Joelson, the Wyoming appellant made no objection to State’s exhibits (which are the equivalent of Montana’s blood test and alcohol analysis forms), and the Wyoming court properly admitted them into evidence under their Rule of Evidence 803(6) “Records of regularly conducted activity.” The Wyoming court stated that “the material contained in the exhibits could be accepted as true or false by the trier of fact.” Joelson, 674 P.2d at 231.
*342 We approve and adopt the Wyoming court’s reasoning as it applies to the case at bar. The trier of fact is in the best position to examine the evidence and observe the witnesses. Here, the District Court chose to believe the information in the forms regarding the nurse and her qualifications, along with other evidence that she was a “qualified person” under Montana law. The forms were properly admitted into evidence.
The record reflects the District Court’s consideration of the qualification issue as follows:
“Court: I think there’s sufficient case made here for the qualification of the nurse. She is in the emergency room, she’s not just an LPN, or at least her drawing, the act of drawing the blood shows that she would not be simply an LPN but would be a qualified person in the circumstances to do this, so I’ll overrule the objection.”
Appellant cites our opinion in State v. McDonald as authority for her position. State v. McDonald (1985), 215 Mont. 340, 697 P.2d 1328. We do not believe that the case at bar is similar since, in the instant case, the name of the person drawing the blood appeared on two separate forms that were properly admitted into evidence. In McDonald, the name of the person who took the blood sample did not appear on any forms. The only identification of that person was by the arresting officer. We held that his testimony about the person who took the blood sample was hearsay since he merely recalled that she had a name tag that said she was a nurse. McDonald, 215 Mont. at 346, 697 P.2d at 1331.
We take this opportunity to note that the Administrative Rules cited in McDonald have been repealed. Even so, the language is not inconsistent with our holding in the instant case.
“[A] criminal defendant on a charge of driving under the influence is entitled to the procedural safeguards of the Administrative Rules of Montana. To admit evidence of blood alcohol content and a test report, the State must lay a foundation pursuant to § 61-8-404, MCA, which incorporates the ARM: (1) the laboratory analysis must be done in a laboratory qualified under the rules of the Department; (2) the report must be prepared in accordance with the rules of the Department; and (3) if a blood sampling, the person withdrawing the blood must be demonstrably qualified to do so.” [Emphasis added.] McDonald, 215 Mont. at 346, 697 P.2d at 1331-32.
Even under this standard, we still find that “D. Hartman,” the person who drew the appellant’s blood, was demonstrably qualified to do so.
*343 Further, we believe the legislature intended to provide a safe, sanitary and controlled method of obtaining blood samples. Historical statutory revisions indicate a desire to protect citizens from being subjected to blood drawn from, for instance, a police officer in the field without proper implements or sterilization techniques.
There is substantial evidence to support the fact that there was both a nurse and doctor present at the hospital, the officer properly requested the blood sample, it was properly taken and its results indicated a criminal level of alcohol. We hold that the nurse was qualified to take the blood sample and, therefore, the testimony of the forensic scientist was properly admitted into evidence. Accordingly, we affirm the District Court’s admission of the testimony of the forensic scientist and uphold the conviction of Beth Decker.
Affirmed.
CHIEF JUSTICE TURNAGE and JUSTICES MCDONOUGH and WEBER concur.