No. 84-420

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ROBERT RAYMOND McDONALD,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Madden, Knuchel & McGregor; Karl Knuchel argued,
Livingston, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
James M. Scheier argued, Asst. Atty. General, Helena
Robert Jovick, City Attorney, Livingston, Montana

---

Submitted: March 11, 1985

Decided: April 2, 1985

Filed: APR 2 1985

Ethel M. Harrison

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant appeals his conviction for driving under the influence, a violation of § 61-8-401, MCA, following a bench trial in the District Court of the Sixth Judicial District, Park County. Claiming that the State failed to comply with full discovery and failed to lay a proper foundation for the admission of a blood alcohol test report and testimony, the defense asks for a reversal with instructions for an acquittal.

Instead, we reverse and remand to the District Court for a new trial.

The following issues are raised on appeal:

(1) Did the District Court allow into evidence State's Exhibit A, the Specimen-Collection Laboratory Analysis form, and testimony on the form without a proper foundation?

> (a) Did the State fail to comply with full discovery?

> (b) Did the State comply with the statutory requirements for admissibility of evidence of blood alcohol content in a prosecution of § 61-8-401 or § 61-8-406, MCA?

(2) Was there sufficient evidence to convict the defendant of the crime of driving under the influence without the evidence of blood alcohol content?

Defendant Robert McDonald was driving his Ford pickup with large camper at about 6:00 a.m. on August 12, 1983, on the city streets of Livingston, Montana. City Police Officer James Perkins observed him traveling west on Park Street in excess of 45 miles per hour in a posted 25 mile per hour zone and followed him for several blocks. McDonald's vehicle crossed the double yellow lines at Park and G, Park and F,

and Park and C streets before Perkins pulled him over in the 100 block of North Main.

After approaching the vehicle, the officer found McDonald to be civil, but he did detect alcohol on his breath. McDonald performed the required field sobriety tests. Although he did all right on some tests, he appeared impaired on others. The officer concluded he was under the influence of alcohol. He arrested McDonald for driving under the influence (DUI), took him to the Park County jail, booked him, and videotaped the implied consent. The Alco-analyzer was malfunctioning, so McDonald agreed to have a blood test at Livingston Memorial Hospital.

Officer Perkins had made about seventy-five arrests for DUI in his career but had asked for blood tests only about ten times. He could not recall specifically at trial who drew the blood sample but testified that she had a tag which said "registered nurse" and he had seen her at the hospital before. Perkins had not filled her name in on the form. He filled out the top part of the lab analysis form with the date, name and address, time blood taken, time McDonald was apprehended, and circled "nurse" as person taking sample. He signed the form, took the sealed vial of blood and left it on the dispatch desk. The next morning someone on duty sent the vial of blood by certified mail to the Missoula crime lab.

Kenneth Anderson, forensic scientist at the crime lab in Missoula, received a sealed blood sample from the Livingston Police Department on August 15, 1983. He followed routine procedures for blood alcohol analysis on the gas chromatograph and recorded a reading of .23, considerably higher than the .10 rebuttable presumption that a person is under the influence. Section 61-8-401(3)(c), MCA. The

3

expert testified that he filled in the bottom half of the lab analysis form.

With Officer Perkins identifying the top half of the form and the forensic scientist identifying the bottom half, the trial court deemed the foundation adequate to admit into evidence the lab analysis report of the blood alcohol test results. Defendant's attorney raised and renewed his objections that the introduction of the document had no foundation and thus was not admissible. The court noted the objections and the lack of testimony from the nurse taking and sealing the sample but determined that "those are things that go to the weight of the evidence rather than the admissibility."

Defendant testified that he had worked the 6:00 p.m. to 2:00 a.m. shift as the manager/bartender at the Livingston Bar and Grill the night before the arrest. He had been employed there eight months. The night of August 11, 1983, Jim Singleton, a prospective employer, had waited from 11:30 p.m. to talk with McDonald about work in the construction business. McDonald claimed he did not drink on shift but had two beers while closing up. It was customary not to drink on shift and the owner was there most of the night. Leaving at about 3:30 a.m., McDonald drove Singleton home, and they talked outside for a couple of hours in order not to disturb Singleton's wife. McDonald stated they had no alcohol in the pickup (and the officer testified he saw none at the arrest). At the time of trial, McDonald was employed at Singleton Construction.

McDonald testified he was not used to driving his pickup with the camper on it and it had been windy that night. In a courtroom demonstration, he had trouble doing the heel/toe tests and walking a straight line with his

cowboy boots, the same attire he wore at the time of the arrest. He claimed he did not drink the quantity of alcohol indicated by the test results and expert testimony, which would have been about twenty twelve-ounce cans of beer.

The trial court in its findings of fact and conclusions of law found that the evidence, including the videotape, the blood test results and testimony of the patrolman, the forensic scientist and defendant, established guilt beyond a reasonable doubt. The court observed of the videotape that while defendant did well on some of the dexterity tests, he wobbled in a few and appeared somewhat dazed. The court entered a judgment of conviction and sentenced the defendant to pay a fine of $300, to serve two days confinement in the Park County jail, and to surrender his driver's license pursuant to § 61-5-208(2), MCA.

(1) Foundation for Exhibit A: Adequate for admissibility?

The issue of admissibility of the blood test results is dispositive because the judge relied in part upon the test as evidence establishing guilt beyond a reasonable doubt. In a trial on the criminal charge of driving under the influence, evidence is admissible only if it meets statutory requirements in addition to the foundation required under the Montana Rules of Evidence.

> "Evidence admissible -- conditions of admissibility. (1) Upon the trial of any criminal action or other proceeding arising out of acts alleged to have been committed by any person in violation of 61-8-401 or 61-8-406:
>
> "(a) evidence of the amount of alcohol in the person's blood at the time of the act alleged, as shown by a chemical analysis of his blood, breath, or urine, is admissible; and

5

"(b) a report of the facts and results of any chemical test of a person's blood, breath, or urine administered under 61-8-401 is admissible in evidence if:

"(i) the breath analysis report was prepared and verified by the person who performed the test or the blood or urine test was a laboratory analysis and the analysis was done in a laboratory operated by the department of justice or by any other laboratory or facility certified or exempt from certification under the rules of the department; and

"(ii) the report was prepared in accordance with any applicable rules of the department; and

"(iii) if the test was on a blood sample, the person withdrawing the blood must have been competent to do so under 61-8-405(1)." Section 61-8-404, MCA. (Emphasis added.)

Appellant contends that the absence of the nurse's name on the form affects the admissibility of State's Exhibit A. Defense counsel objected at trial to the inadequate foundation, claiming that without the name of the person responsible for the information contained in the document, the court should have suppressed the evidence and testimony. In failing to provide the nurse's name, the State prevented defendant from challenging the adequacy of the procedures used at this step.

The State forensic scientist in testifying to his analysis of the blood sample relied upon basic assumptions about the procedures used in taking the blood sample, appellant contends. His testimony has no foundation without a showing that his assumptions about the blood sample were correct, i.e., the report was prepared in accordance with the administrative rules of the department and the person withdrawing the blood was qualified to do so under § 61-8-405(1), MCA:

6

"Administration of tests. (1) Only a physician or registered nurse or other qualified person under the supervision and direction of a physician or registered nurse acting at the request of a police officer may withdraw blood for the purpose of determining the alcoholic content therein. . . ."

The State contends that the test administered was performed in compliance with Montana law. At the request of Officer Perkins, a qualified person withdrew the blood. The State claims the fact that Exhibit A does not contain the name of the person does not render the test results inadmissible. Further, questions about accuracy of a chemical test go to the weight of the evidence, not admissibility, the State argues. The State asserts it complied with full discovery by fully disclosing all the information it had to defendant. The State's basic contention is that the foundation for admitting the document was adequate: Officer Perkins identified the top half of the form from filling in the information and the forensic scientist identified the bottom half after performing the test and noting the result.

The applicable rules of the Department, however, require more than the officer's assumption that the person was qualified to perform the test and that it was administered properly.

"BLOOD SAMPLING. (1) Blood samples may be collected from living individuals only by persons authorized by law, upon written request of a peace officer. The skin at the area of puncture must be thoroughly cleansed and disinfected with an aqueous solution of non-volatile antiseptic. Alcohol of phenolic solutions may not be used as a skin antiseptic.

". . .

"(3) At least 5 milliliters of blood should be collected for analysis.

7

> "(4) The blood sample must be deposited into a clean dry container, containing a solid anti-coagulant and preservative. The container should then be capped or stoppered and sealed in a mailing container with <u>at least</u> <u>the</u> <u>following</u> <u>information</u>:
>
> "(a) Name of suspect;
>
> "(b) Date, time and site . . . of collection; and
>
> "(c) <u>Name</u> <u>or</u> <u>initials</u> <u>of</u> <u>persons</u> <u>col-</u> <u>lecting</u> <u>and/or</u> <u>sealing</u> <u>sample</u>.
>
> "(5) Sodium flouride or its equivalent must be used as a preservative. Sodium citrate or potassium oxalate or equivalent must be used as an anti-coagulant. If no additive or additives other than those listed above are used, a comment so stating should accompany the sample. If other additives are employed, the name of the additive and its quantity should be listed.
>
> "(6) <u>When</u> <u>possible,</u> <u>the</u> <u>officer</u> <u>re-</u> <u>questing</u> <u>blood</u> <u>sampling</u> <u>shall</u> <u>observe</u> <u>sample</u> <u>collection</u> <u>so</u> <u>that</u> <u>he</u> <u>or</u> <u>she</u> <u>may</u> <u>attest</u> <u>to</u> <u>the</u> <u>sample's</u> <u>authenticity.</u> <u>The</u> <u>officer</u> <u>should</u> <u>then</u> <u>initial</u> <u>or</u> <u>mark</u> <u>the</u> <u>sample</u> <u>seal</u> <u>for</u> <u>further</u> <u>identifica-</u> <u>tion</u>." A.R.M. 23.3.931. (Emphasis added.)

The Department's own regulations require a written request to a person authorized by law to collect the sample. The rules spell out the procedure for blood sampling, and then require a minimum of information on the mailing container lab form, including the name or initials to identify the person collecting and/or sealing the sample.

The rule recommends that the officer observe the collection to verify authenticity and then initial or identify the sample. It is clear that the initials or name of the nurse should have appeared on the form in addition to that of Officer Perkins. Without the identification of the nurse on the lab form, Perkins' testimony that she was a nurse because

he recalled she had a tag saying she was a nurse amounts to hearsay.

We hold that a criminal defendant on a charge of driving under the influence is entitled to the procedural safeguards of the Administrative Rules of Montana. To admit evidence of blood alcohol content and a test report, the State must lay a foundation pursuant to § 61-8-404, MCA, which incorporates the ARM: (1) the laboratory analysis must be done in a laboratory qualified under the rules of the Department; (2) the report must be prepared in accordance with the rules of the Department; and (3), if a blood sampling, the person withdrawing the blood must be demonstrably qualified to do so.

(2) <u>Sufficient evidence to convict without the blood alcohol test</u>?

We cannot decide the sufficiency of the evidence without the blood test, because we have no indication of the weight the trial court placed upon the test in its decision. We cannot try the matter de novo. For this reason, we remand for a new trial.

Reversed and remanded.

Chief Justice

9

We concur:

_____
_____
_____
_____
_____
Justices