*228 MR. JUSTICE GULBRANDSON
delivered the Opinion of the Court.
Defendant Jeffrey O’Brian (O’Brian) appeals from the judgment and sentence entered by the Fourteenth Judicial District Court, Musselshell County. Based upon the results of an Intoxilizer test administered to O’Brian, the District Court found him guilty beyond a reasonable doubt of a per se violation of driving a vehicle with a blood alcohol concentration greater than 0.10. We affirm.
The sole issue raised upon appeal is whether the District Court erred in admitting the results of. an Intoxilizer 5000 blood alcohol concentration test when the test was allegedly not administered in compliance with requirements of the Administrative Rules of Montana?
Shortly after 2:00 a.m. on May 26, 1987, officer Woodrow Weitzel stopped O’Briari for failing to dim his lights. The officer requested O’Brian to produce his driver’s license and insurance, which O’Brian produced without difficulty. The officer, however, detected the strong odor of alcohol on O’Brian’s breath while talking with him. Consequently, the officer requested O’Brian to take several field sobriety tests, including the Horizontal Gaze Nystagmus test and the one-legged stand test. Following these test, the officer placed O’Brain under arrest for driving under the influence of alcohol (DUI) and drove him to the Musselshell County jail. An Intoxilizer 5000 test was administered at the jail.
Officer Weitzeil, a trained operator of the Intoxilizer 5000 instrument administered the test. The officer first conducted a calibration check of the instrument by passing a simulator solution through the instrument. The solution had a known concentration of 0.10 grams of alcohol per 210 liters of vapor five to seven months prior to this calibration check. The Intoxilizer 5000 registered an alcohol content in the solution of 0.060. The officer ran an air blank through the instrument clear all traces of alcohol vapor from it and then requested that O’Brian blow into the instrument. It registered O’Brian’s blood alcohol concentration at 0.207 at 2:32 a.m. that morning. The officer conducted another calibration check with the same simulator solution. The solution registered an alcohol content of 0.062 during the second check. An air blast was again run through the instrument and then O’Brian was again tested. This second test of O’Brian, three minutes after the first test, registered a blood alcohol content of 0.187. O’Brian was subsequently charged by amended *229 complaint with operating a motor vehicle with an alcohol concentration of 0.10 or more in violation of § 61-8-406, MCA.
O’Brian was tried on this charge in Justice Court on November 13, 1987. Following a trail and without determination of guilt, the Justice of the Peace dismissed the criminal charge inn the amended complaint for lack of jurisdiction. Among other errors, the Justice of the Peace found that O’Brian had not been arraigned on the amended charge of DUI per se and had not entered a plea to this charge prior to trial. The county then appealed this dismissal to the Fourteenth Judicial District Court of Musselshell County.
On April 7, 1988, the District Court arraigned O’Brian on the DUI per se charge and then proceeded with a nonjury trial, over objection of double jeopardy and lack of a speedy trial by the defense counsel. At the conclusion of the trial, the court held that the Intoxilizer 5000 test was administered in substantial compliance with state statutes and the Administrative Rules of Montana. The court then adjudged the defendant guilt, based solely upon the results of the Intoxilizer 5000 test, of driving with a blood alcohol content of 0.10 or greater in violation of § 61-8-406, MCA. The court ordered O’Brian to pay a $100 fine, to pay for and complete an alcohol treatment program, and to surrender his permanent driver’s license. O’Brian appeals from this judgment and sentence.
Appellant contends that Officer Weitzeil failed to administer the Intoxilizer 5000 test in compliance with the requirements of the Administrative Rules of Montana. The Rules require a calibration check to fall within a plus or minus one-tenth range of the known alcohol concentration of a reference solution to guarantee the instrument’s accuracy prior to admission of the test. Yet, in this case, the Intoxilizer 5000 registered the simulator solution at 0.060 and 0.062 just prior to the testing of appellant. These readings do not come within the required plus or minus one-tenth range of the known 0.10 alcohol concentration of the solution. Consequently, the appellant contends the test was not administered in compliance with the Administrative Rules of Montana, the accuracy of the test results were questionable, and the court thus erred in admitting the Intoxilizer 5000 test results into evidence.
At the outset, we note that a criminal defendant charged with driving under the influence of alcohol is indeed entitled to any procedural safeguards in the Administrative Rules of Montana. State v. McDonald (1985), 215 Mont. 340, 697 P.2d 1328, 1331, 42 St.Rep. 414, 419. Those procedural safeguards which are relevant to this *230 case and which the defendant alleges were violated are found in § 23.4.135(2), ARM (1987):
(2) The department shall examine and evaluate any breath-testing instrument submitted for its approval. The department may approve the instrument if the instrument meets the following criteria:
(b) The instrument is capable of analyzing a suitable reference sample, such as air equilibrated with a reference solution of known alcohol content at a known temperature. The results of such analysis must fall within a range defined by plus or minus one-tenth of the alcohol concentration of the reference solution or such other limits set by the department . . .
This Administrative Rule requires only that the Intoxilizer 5000 instrument be capable of analyzing a reference simulator solution within a plus or minus one-tenth range. The Rule does not require a calibration check before each test, although officers routinely ran such a check prior to the testing of each defendant.
The Intoxilizer 5000 instrument used on the defendant had satisfied the requirements of the Administrative Rules prior to its use. Expert witness William Newhouse, a forensic scientist at the Montana Department of Justice’s Crime Laboratory in Missoula, testified that the instrument in use at the time of defendant’s arrest had been installed in the Musselshell County Sheriffs office on June 17, 1986. At that time, a calibration check using a similar solution with a known alcohol concentration of 0.10, resulted in a 0.102 reading. This reading was well within the permissible one-tenth range of accuracy. Additionally, the officer who administered the test on the defendant was properly trained in the use of the Intoxilizer 5000 test and conducted the test in accordance with such training. We hold that the evidence adduced at trial was sufficient to indicate the proper working condition of the instrument on May 26, 1987 and to ensure the legal sufficiency of the admitted evidence. Expert witness Newhouse testified that a calibration check is not necessary prior to every breath test to ensure the accuracy of an Intoxilizer 5000 instrument. Rather, periodic calibration checks would sufficiently guarantee the proper working condition of the instrument. On October 8, 1987, Joe Stewart, another forensic scientist with the Crime Lab in Missoula, conducted just such a periodic check of the instrument at issue in this case. The Intoxilizer registered the alcohol level of a new simulator solution with a known 0.10 alcohol concentration at 0.098, 0.096, ,0.098, and 0.0987, respectively, after four separate *231 calibration checks. Each of these checks indicated the instrument was properly working and calibrating within the instrument’s required range of accuracy. Newhouse thus concluded:
“Again, based on our records at the laboratory and on the log records, I can tell you, based on my familiarity with this instrument over four years and [with] 65 other instruments, that I can tell that instrument was measuring blood alcohol content on breath test accurately on May 26, 1987.”
Further, the testimony at trial sufficiently explained the reason for the low calibration checks on May 26, 1987 and the lack of effect such low readings would have had on the accuracy of the appellant’s breath tests. As Newhouse testified, the low calibration readings of 0.060 and 0.062 on May 26, 1987 were due to a general decrease in the alcohol concentration of the simulator solution because of its repeated use over the prior four to five month period. The Crime Lab instructed all officers operating the Intoxilizer 5000 to change the simulator solution once a month to prevent this decrease in the solution’s alcohol concentration, but the officers failed to do so. Consequently, many calibration checks such as the ones run on May 26, 1987 proved essentially worthless because of the unknown alcohol concentration of the simulator solution. However, these invalid calibration checks had no bearing on the validity of the defendant’s breath test for, as stated by Newhouse, “calibration checks are entirely independent of the breath tests.” The low calibration readings thus were not indicative of a faulty instrument, but only of a gradually diminished alcohol content in the simulator solution. We therefore hold that the District Court did not err in holding that the Intoxilizer 5000 test was administered in substantial compliance with the Administrative Rules of Montana.
The evidence introduced at trial indicated probable cause for the arrest, the proper administration of the Intoxilizer test to O’Brian, the proper working condition of the instrument, and the excessive alcohol concentration in the defendant’s blood at the time of his arrest in violation of § 61-8-406, MCA. The Intoxilizer 5000 registered the alcohol concentration of O’Brian’s breath first at 0.207 and then at 0.187, which when averaged to 0.197 amounts to nearly double the alcohol concentration allowed when driving an automobile upon the public roads in Montana. This concentration indicated O’Brian had been operating his vehicle with an alcohol concentration of 0.10 or more in violation of § 61-8-406, MCA, a statutory provision imposing absolute liability upon a defendant upon proof of such an *232 excessive concentration. The District Court thus did not err in finding the defendant guilty beyond a reasonable doubt of driving while under the influence of alcohol and in then imposing a sentence in accordance with § 6-8-722, MCA.
The judgment and sentence of the District Court are affirmed.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON, WEBER and McDONOUGH concur.