No. **91-284**

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1991**

STATE OF MONTANA,

       Plaintiff and Respondent,

-vs-

BETH DECKER,

       Defendant and Appellant.

**FILED**

NOV 2 5 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Tenth Judicial District,
                In and for the County of Fergus,
                The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Lawrence A. LaFountain, Lewistown, Montana

      For Respondent:

      Hon. Marc Racicot, Attorney General; Deanne L.
      Sandholm, Asst. Atty. General, Helena, Montana
      Thomas P. Meissner, County Attorney, Lewistown,
      Montana and Monte J. Boettger, Lewistown, Montana

Submitted on Briefs:  September 12, **1991**

Decided:  November 25, 1991

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Defendant and appellant, Beth Decker, was convicted of driving under the influence in the Tenth Judicial District, Fergus County, Montana.  Beth Decker appeals and we affirm.

The sole issue before this Court is whether the District Court erred in allowing into evidence testimony of a forensic scientist regarding the appellant's blood alcohol content.

On April 12, 1990, after being notified via radio of a single car accident in Lewistown, Montana, Officer Moring of the Lewistown Police Department arrived at the scene and found the appellant Beth Decker.  She admitted to being the driver of the car.  As a result of the accident she received a split lip which needed medical attention.  The officer took her to the police station since she initially refused medical attention, so she could see the injury. After viewing the injury, the appellant changed her mind and desired medical treatment. While at the police station the officer procured the necessary paper work for a blood withdrawal since there was evidence of a possible DUI; he perceived the smell of alcohol on the appellant and in the car.  He transported the appellant to the hospital and upon arrival the nurse on duty summoned the emergency room doctor.  The officer observed the doctor's activity and then properly administered the implied consent form.  Subsequently, the officer presented the blood test request form to the nurse and remained while the nurse: drew the appellant's blood, correctly sealed the sample, and initialed the seal.  The officer took possession of the

sample and sent it to the Missoula Crime Lab via certified mail with a completed "alcohol analysis request form" enclosed. The results of the blood analysis revealed a blood alcohol content level higher than the legal limit.

Procedural safeguards for drawing blood for the purpose of determining alcohol content are set forth in § 61-8-404(1)(b)(iii), MCA (1989), which states that "if the test was on a blood sample, the person withdrawing the blood must have been competent to do so under 61-8-405(1)." Section 61-8-405(1), MCA (1989), provides that: "Only a physician or registered nurse or other qualified person under the supervision and direction of a physician or registered nurse acting at the request of a peace officer may withdraw blood for the purpose of determining alcoholic content."

The issue on appeal revolves around whether "D. Hartman," the hospital personnel who withdrew the appellant's blood, was identifiable as a person qualified to do so.

A similar situation arose in Wyoming. Joelson v. State (Wyo. 1984), 674 P.2d 229. In Joelson, the appellant argued that no evidence was introduced that the blood was taken by a registered nurse, physician or other qualified personnel. The nurse in Joelson properly collected the blood sample and completed paperwork which included her designation as an RN. The Wyoming court reasoned that

> The letters RN, placed in the space provided for "title," are defined as "1) registered nurse 2) Royal Navy," Webster's New Collegiate Dictionary (G.& C. Merriam Co. 1979). We do not believe that Theresa Hansen was indicating that she was a member of the Royal Navy . . . [she] was working in the emergency room of the Campbell County Memorial Hospital, and as it is generally recognized by the majority

**3**

of the people that the initials RN are an abbreviation for registered nurse, we hold that the trier of fact could believe from all the evidence that Theresa Hansen was a registered nurse.

Joelson, 674 P.2d at **231.**

The Wyoming court admitted the blood test results into evidence and stated that "the appellant introduced nothing to impeach or contradict this evidence."  Joelson, 674 P.2d at 232.

The situation in the case at bar is similar.  The record indicates that the officer took the appellant to the hospital where they were greeted by a nurse.  The nurse summoned the doctor and after an examination of the appellant's injury a blood sample was obtained by the nurse.  Proper documentation and paper work were completed.  At trial, two forms were admitted into evidence without objection.  First, the blood test request form which indicated the nurse's name as follows:

        D. Hartman
(Physician, Registered Nurse, etc.)

Second, the alcohol analysis request appeared as follows:

        Hartman
    (Physician, Nurse, Med. Tech)

In Joelson, the Wyoming appellant made no objection to State's exhibits (which are the equivalent of Montana's blood test and alcohol analysis forms) and the Wyoming court properly admitted them into evidence under their Rule of Evidence **803(6)** "Records of regularly conducted activity."  The Wyoming court stated that "the material contained in the exhibits could be accepted as true or false by the trier of fact."  Joelson, 674 P.2d at **231.**

4

We approve and adopt the Wyoming court's reasoning as it applies to the case at bar. The trier of fact is in the best position to examine the evidence and observe the witnesses. Here, the District Court chose to believe the information in the forms regarding the nurse and her qualifications, along with other evidence that she was a "qualified person" under Montana law. The forms were properly admitted into evidence.

The record reflects the District Court's consideration of the qualification issue as follows:

> Court: I think there's sufficient case made here for the qualification of the nurse. She is in the emergency room, she's not just an LPN, or at least her drawing, the act of drawing the blood shows that she would not be simply an LPN but would be a qualified person in the circumstances to do this, so I'll overrule the objection.

Appellant cites our opinion in State v. McDonald as authority for her position. State v. McDonald (1985), 215 Mont. 340, 697 P.2d 1328. We do not believe that the case at bar is similar since, in the instant case, the name of the person drawing the blood appeared on two separate forms that were properly admitted into evidence. In McDonald, the name of the person who took the blood sample did not appear on any forms. The only identification of that person was by the arresting officer. We held that his testimony about the person who took the blood sample was hearsay since he merely recalled that she had a name tag that said she was a nurse. McDonald, 215 Mont. at 346, 697 P.2d at 1331.

We take this opportunity to note that the Administrative Rules cited in McDonald have been repealed. Even so, the language is not

inconsistent with our holding in the instant case.

> [A] criminal defendant on a charge of driving under the influence is entitled to the procedural safeguards of the Administrative Rules of Montana. To admit evidence of blood alcohol content and a test report, the State must lay a foundation pursuant to § 61-8-404, MCA, which incorporates the ARM: (1) the laboratory analysis must be done in a laboratory qualified under the rules of the Department; (2) the report must be prepared in accordance with the rules of the Department; and (3), if a blood sampling, the person withdrawing the blood must be <u>demonstrably qualified to do so</u>. [Emphasis added.]

McDonald, 215 Mont. at 346, 697 P.2d at 1331-32.

Even under this standard we still find that "D. Hartman," the person who drew the appellant's blood, was demonstrably qualified to do so.

Further, we believe the legislature intended to provide a safe, sanitary and controlled method of obtaining blood samples. Historical statutory revisions indicate a desire to protect citizens from being subjected to blood drawn from, for instance, a police officer in the field without proper implements or sterilization techniques.

There is substantial evidence to support the fact that there was both a nurse and doctor present at the hospital, the officer properly requested the blood sample, it was properly taken and its results indicated a criminal level of alcohol. We hold that the nurse was qualified to take the blood sample and therefore the testimony of the forensic scientist was properly admitted into evidence. Accordingly, we affirm the District Court's admission of the testimony of the forensic scientist and uphold the conviction

of Beth Decker.

Affirmed.

_____
                                    Justice

We concur:

_____
                  Chief Justice


_____


_____
                  Justices

7

Justice Terry N. Trieweiler dissenting.

I dissent from the opinion of the majority. The requirement that a person drawing blood possess certain qualifications before that blood can reliably be used as evidence of a motorist's intoxication is not an inconsequential requirement.

The procedures that must necessarily be followed to assure that blood is a reliable indicator of a person's blood alcohol content are technical and demanding. This is evident from previous rules established by the Department of Justice, and from our prior case law.

In 1978, the Department of Justice enacted § 23.3.931, **ARM,** which set forth the following specific requirements for the withdrawal of blood:

> (1) Blood samples may be collected from living individuals only by persons authorized by law, upon written request of a peace officer. The skin at the area of puncture must be thoroughly cleansed and disinfected with an aqueous solution of non-volatile antiseptic. Alcohol of phenolic solutions may not be used as a skin antiseptic.
>
> . . . .
>
> *(3)* At least five milliliters of blood should be collected for analysis.
>
> (4) The blood sample must be deposited into a clean dry container, containing a solid anti-coagulant and preservative. The container should then be capped or stoppered and sealed in a mailing container with at least the following information:
> (a) Name of suspect;
> (b) Date, time and site . . . of collection; and
> (c) Name or initials of persons collecting and/or sealing sample.

*8*

*(5)* Sodium fluoride or its equivalent must be used as a preservative. Sodium citrate or potassium oxalate or equivalent must be used as an anti-coagulant. If no additive or additives other than those listed above are used, a comment so stating should accompany the sample. If other additives are employed, the name of the additive and its quantity should be listed.

(6) When possible, the officer requesting blood sampling shall observe sample collection so that he or she may attest to the sample's authenticity. The officer should then initial or mark the sample seal for further identification.

The purpose of these procedural requirements is to assure the reliability of blood drawn for the purpose of proving a person's intoxication. In *State v. McDonald* (1985), **215** Mont. **340, 697** P.2d **1328,** we considered the procedure, as well as the qualifications of the person withdrawing the blood, to be so important that we reversed that defendant's conviction where both had not been proven.

In *McDonald,* defendant was taken to the hospital where blood was drawn by an employee specifically identified with a tag that said "Registered Nurse." The officer who was present at the blood drawing identified the person who drew the blood as a nurse, but was unable to provide further information about her identity or qualifications. The defendant in that case, like the defendant in this case, objected to the introduction of the crime lab's blood analysis on the grounds that insufficient foundation had been laid to establish that it had been drawn by a qualified person in a procedurally correct manner. We agreed, and in doing so relied on

9

§ 61-8-404, MCA, which requires that "the person withdrawing the blood must have been competent to do so under § 61-8-405(1)." After citing the aforementioned departmental rules for withdrawal of blood, we also discussed the importance of the qualifications of the person withdrawing the blood. We held as follows:

> We hold that a criminal defendant on a charge of driving under the influence is entitled to the procedural safeguards of the Administrative Rules of Montana. To admit evidence of blood alcohol content and a test report, the State must lay a foundation pursuant to § 61-8-404, MCA, which incorporates the ARM: (1) the laboratory analysis must be done in a laboratory qualified under the rules of the Department: (2) the report must be prepared in accordance with the rules of the Department; and (3), *if n blood sampling, the person withdrawing the blood must be demoiistrnbly qualified to do so.* [Emphasis added.]

*McDonald*, 697 P.2d at 1331-32.

It is true that in 1988, prior to the date of the defendant's conduct which is complained of in this case, the departmental rules establishing the procedure for withdrawing blood were repealed. However, the repeal of those administrative safeguards did not eliminate the requirements of §§ 61-8-404 and -405(1), MCA. If anything, the elimination of other procedural safeguards made the qualifications of the person withdrawing the blood even more important.

The requirements of § 61-8-405(1), MCA (which we previously held were a foundational requirement), are very specific. Pursuant to that section:

> Only a physician or registered nurse or other qualified person under the supervision and direction of a physician

10

or registered nurse acting at the request of a peace officer may withdraw blood for the purpose of determining any measured amount or detected presence of alcohol in the person.

There was absolutely no evidence in this case that the person who withdrew blood from the defendant was a physician, registered nurse, or "other qualified person under the supervision and direction" of a physician or nurse.

The majority states that after arriving at the hospital "the officer presented the blood test request form to the nurse and remained while the nurse drew the appellant's blood . . . ." However, there was no testimony by the person who drew the blood to the effect that she was a nurse of any kind. Nor was there any effort to lay any foundation for her qualifications through the officer who presented the form to her. The majority states that:

> Here, the District Court chose to believe the information in the forms regarding the nurse and her qualifications, along with other evidence that she was a "qualified person" under Montana law.

This observation makes no sense because there was nothing in the form for the District Court to believe or disbelieve regarding the "nurse's" qualifications. The form simply bore her signature on a line under which it stated (Physician, Registered Nurse, etc.). There is no further indication on the form whether she was a physician, registered nurse, or an etcetera. If she was an etcetera, there is no indication whether she was a lab technician, x-ray technician, practical nurse, nurse's aid, hospital volunteer, or passerby. Nor was there any "other evidence" as referred to by

11

the majority. The only two witnesses who testified at trial were Thomas Moring, the Highway Patrolman who arrested the defendant, and Lynn Kurtz, the forensic scientist from the State Crime Lab in Missoula. Neither were asked for, nor gave any information about the "nurse's" background, title, experience, other qualifications, or the color of her uniform. Neither identified her as a registered nurse as opposed to a licensed practical nurse. The mere fact that Officer Moring presumed she was a nurse at all was the kind of speculation that we specifically prohibited in *McDonald*. At least in *McDonald*, the person who was presumed to have been a registered nurse had a tag that said "Registered Nurse." We concluded, however, that even that was insufficient. In this case, there is no indication that the person who withdrew the defendant's blood had any such identification.

The majority relies on the Wyoming Supreme Court's decision in *Joelson v. State* (Wyo. 1984), 674 P.2d 229. However, that case is not in point. The person who withdrew the blood from the defendant in that case filled out the appropriate paperwork and identified herself as an RN. The paperwork in which she identified herself in that manner was admitted at trial without objection. That court, therefore, held that the statutory requirement that blood be withdrawn by a registered nurse had been satisfied. No such identification was provided by D. Hartman on any form that she filled out in this case. Therefore, the Wyoming court's remarks

12

which are cited by the majority in this case are completely irrelevant to the facts here.

It is not a significant burden on the many qualified prosecutors in this state to require that they prove that the person who drew blood from a defendant was a doctor, registered nurse, or some other qualified person acting under their supervision. The majority's inference to the contrary ignores common practice in our district courts.

It is strange that yesterday's foundational requirements become so quickly insignificant upon reconsideration.

The effect of today's majority decision is to totally eliminate the statutorily imposed requirements of §§ 61-8-404 and -405(1), MCA. From this day forward, intoxication can be proven with blood samples drawn by an etcetera.

_____
Justice

13

November 25, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Lawrence A. LaFountain
Attorney at Law
P.O. Box 548
Lewistown. MT  59501

Hon. Marc Racicot, Attorney General
Deanne Sandholm, Asst. Atty. Gen.
Justice Building
Helena, MT  59620

Thomas P. Meissner
Fergus County Attorney
Suite A, 701 E. Main
Lewistown. MT  59457

Monte J. Boettger
Attorney at Law
305 W. Watson St.
Lewistown, MT  59457


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy