JUSTICE TRIEWEILER,
dissenting.
I dissent from the opinion of the majority. The requirement that a person drawing blood possess certain qualifications before that blood can reliably be used as evidence of a motorist’s intoxication is not an inconsequential requirement.
The procedures that must necessarily be followed to assure that blood is a reliable indicator of a person’s blood alcohol content are technical and demanding. This is evident from previous rules established by the Department of Justice and from our prior case law.
In 1978, the Department of Justice enacted § 23.3.931, ARM, which set forth the following specific requirements for the withdrawal of blood:
“(l)Blood samples may be collected from living individuals only by persons authorized by law, upon written request of a peace officer. The skin at the area of puncture must be thoroughly cleansed and disinfected with an aqueous solution of non-volatile antiseptic. Alcohol of phenolic solutions may not be used as a skin antiseptic.
“(3) At least five milliliters of blood should be collected for analysis.
“(4) The blood sample must be deposited into a clean dry container, containing a solid anti-coagulant and preservative. The container should then be capped or stoppered and sealed in a mailing container with at least the following information:
*344 “(a) Name of suspect;
“(b) Date, time and site ... of collection; and
“(c) Name or initials of persons collecting and/or sealing sample.
“(5) Sodium fluoride or its equivalent must be used as a preservative. Sodium citrate or potassium oxalate or equivalent must be used as an anti-coagulant. If no additive or additives other than those listed above are used, a comment so stating should accompany the sample. If other additives are employed, the name of the additive and its quantity should be listed.
“(6) When possible, the officer requesting blood sampling shall observe sample collection so that he or she may attest to the sample’s authenticity. The officer should then initial or mark the sample seal for further identification.”
The purpose of these procedural requirements is to assure the reliability of blood drawn for the purpose of proving a person’s intoxication. In State v. McDonald (1985), 215 Mont. 340, 697 P.2d 1328, we considered the procedure, as well as the qualifications of the person withdrawing the blood, to be so important that we reversed that defendant’s conviction where both had not been proven.
In McDonald, defendant was taken to the hospital where blood was drawn by an employee specifically identified with a tag that said “Registered Nurse.” The officer who was present at the blood drawing identified the person who drew the blood as a nurse but was unable to provide further information about her identity or qualifications. The defendant in that case, like the defendant in this case, objected to the introduction of the crime lab’s blood analysis on the grounds that insufficient foundation had been laid to establish that it had been drawn by a qualified person in a procedurally correct manner. We agreed and, in doing so, relied on § 61-8-404, MCA, which requires that “the person withdrawing the blood must have been competent to do so under § 61-8-405(1).” After citing the aforementioned departmental rules for withdrawal of blood, we also discussed the importance of the qualifications of the person withdrawing the blood. We held as follows:
“We hold that a criminal defendant on a charge of driving under the influence is entitled to the procedural safeguards of the Administrative Rules of Montana. To admit evidence of blood alcohol content and a test report, the State must lay a foundation pursuant to § 61-8-404, MCA, which incorporates the ARM: (1) the laboratory analysis must be done in a laboratory qualified under the rules of the Department; (2) the report must be prepared in accordance with the *345 rules of the Department; and (3) if a blood sampling, the person withdrawing the blood must be demonstrably qualified to do so.” [Emphasis added.]
McDonald, 697 P.2d at 1331-32.
It is true that in 1988, prior to the date of the defendant’s conduct which is complained of in this case, the departmental rules establishing the procedure for withdrawing blood were repealed. However, the repeal of those administrative safeguards did not eliminate the requirements of §§ 61-8-404 and 405(1), MCA. If anything, the elimination of other procedural safeguards made the qualifications of the person withdrawing the blood even more important.
The requirements of § 61-8-405(1), MCA (which we previously held were a foundational requirement), are very specific. Pursuant to that section:
“Only a physician or registered nurse or other qualified person under the supervision and direction of a physician or registered nurse acting at the request of a peace officer may withdraw blood for the purpose of determining any measured amount or detected presence of alcohol in the person.”
There was absolutely no evidence in this case that the person who withdrew blood from the defendant was a physician, registered nurse, or “other qualified person under the supervision and direction” of a physician or nurse.
The majority states that after arriving at the hospital, “the officer presented the blood test request form to the nurse and remained while the nurse drew the appellant’s blood ... .” However, there was no testimony by the person who drew the blood to the effect that she was a nurse of any kind. Nor was there any effort to lay any foundation for her qualifications through the officer who presented the form to her. The majority states that:
“Here, the District Court chose to believe the information in the forms regarding the nurse and her qualifications, along with other evidence that she was a ‘qualified person’ under Montana law.”
This observation makes no sense because there was nothing in the form for the District Court to believe or disbelieve regarding the “nurse’s” qualifications. The form simply bore her signature on a line under which it stated (Physician, Registered Nurse, etc.). There is no further indication on the form whether she was a physician, registered nurse, or an etcetera. If she was an etcetera, there is no indication whether she was a lab technician, X-ray technician, practical nurse, nurse’s aid, hospital volunteer, or passerby. Nor was there *346 any “other evidence” as referred to by the majority. The only two witnesses who testified at trial were Thomas Moring, the Highway Patrolman who arrested the defendant and Lynn Kurtz, the forensic scientist from the State Crime Lab in Missoula. Neither were asked for, nor gave any information about the “nurse’s” background, title, experience, other qualifications, or the color of her uniform. Neither identified her as a registered nurse as opposed to a licensed practical nurse. The mere fact that Officer Moring presumed she was a nurse at all was the kind of speculation that we specifically prohibited in McDonald. At least in McDonald, the person who was presumed to have been a registered nurse had a tag that said “Registered Nurse.” We concluded, however, that even that was insufficient. In this case, there is no indication that the person who withdrew the defendant’s blood had any such identification.
The majority relies on the Wyoming Supreme Court’s decision Joelson v. State (Wyo. 1984), 674 P.2d 229. However, that case is not in point. The person who withdrew the blood from the defendant in that case filled out the appropriate paperwork and identified herself as an RN. The paperwork in which she identified herself in that manner was admitted at trial without objection. That court, therefore, held that the statutory requirement that blood be withdrawn by a registered nurse had been satisfied. No such identification was provided by D. Hartman on any form that she filled out in this case. Therefore, the Wyoming court’s remarks which are cited by the majority in this case are completely irrelevant to the facts here.
It is not a significant burden on the many qualified prosecutors in this state to require that they prove that the person who drew blood from a defendant was a doctor, registered nurse, or some other qualified person acting under their supervision. The majority’s inference to the contrary ignores common practice in our district courts.
It is strange that yesterday’s foundational requirements become so quickly insignificant upon reconsideration.
The effect of today’s majority decision is to totally eliminate the statutorily-imposed requirements of §§ 61-8-404 and 405(1), MCA. From this day forward, intoxication can be proven with blood samples drawn by an etcetera.