No. 96-723

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

v.

TIMOTHY F. WOODS,

Defendant and Appellant.

APPEAL FROM:     District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gregory A. Jackson, Jackson and Rice Law Firm, Helena, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Pamela P. Collins,
Assistant
Attorney General, Helena, Montana; Mike McGrath, Lewis and
Clark County Attorney, Mike Menehan, Deputy Lewis and Clark
County Attorney, Helena, Montana

Submitted on Briefs: May 29, 1997

Decided:    October 16, 1997

Filed:

_____
Clerk

Justice William E. Hunt delivered the Opinion of the Court.

Timothy F. Woods (Woods) was charged by information with driving under the influence of alcohol, fourth offense. Woods moved the District Court to suppress the results of his breathalyser test. The First Judicial District Court, Lewis and Clark County, denied his motion. Woods pleaded guilty, reserving his right to appeal that decision. Woods now appeals from the judgment and sentence entered by the District Court and the decision denying his motion to suppress the breathalyser test result. We affirm.

The issue on appeal is whether the District Court abused its discretion when it failed to suppress Woodsþ breath test results over Woodsþ objection that a proper foundation was not established.

BACKGROUND

On February 8, 1996, Woods was arrested for driving under the influence of alcohol. Woods submitted to a breath test that same day on the Intoxilyzer 5000 instrument. The intoxilyzer indicated a breath alcohol concentration of 0.125, higher than the 0.10 inference that a person is under the influence. Section 61-8-401(4)(c), MCA. It is the admissibility of this test result that Woods challenges.

The State is required to routinely certify the accuracy of the breath analysis instruments by passing a simulator ethyl alcohol solution through the instrument. See generally, õ 23.4.213, ARM. The rules require a calibration check to fall within a plus or minus one-tenth range of the known 0.10 alcohol concentration of the solution. Rule 23.4.213(1)(b), ARM.

The solution used to certify the instrument in this case came from the manufacturerþs lot number 94140. The division of forensic science approved that lot on June 12, 1994. The manufacturer warranted the solution until April 1, 1995. After that date, it would neither monitor nor test the solution. The manufacturer stated, however, that the solutionþs integrity could be assured through continued monitoring by the State.

In June 1995, after the warranty had expired, the division of forensic science for the State retested lot number 94140 and determined that the solution remained within the range specified by the rules. Rule 23.4.213(1)(b), ARM. It also concluded that the solution would remain accurate and reliable for years. The State did not subsequently retest that lot prior to its use in the breath analysis instrument when Woods was tested.

Lot number 94140 was divided into thousands of bottles. The State used the

solution in bottle number 1673 from that lot in January 1996. On January 18, 1996, the State was unable to get any reading at all on the Intoxilyzer 5000 due to problems with the instrument. The first time the State actually used bottle number 1673 was on January 24, 1996. The first four times it was used, there was an internal failure with the instrument. The Intoxilyzer 5000 instrument was repaired and the next eight times it was tested that day, the readings were within the specified range. Nevertheless, the State took the instrument out of service for further maintenance. On February 6, 1996, the crime laboratory for the forensic science division certified that the Intoxilyzer 5000 was working properly. That same day, the intoxilyzer was certified for proper calibration, again using the solution from bottle 1673.

On February 9, 1996, one day after Woods took the test, the instrument was again tested and was certified for proper calibration. This time the State used a new bottle of solution.

## DISCUSSION

Did the District Court abuse its discretion when it failed to suppress Woodsþ breath test results over Woodsþ objection that a proper foundation was not established?

It is within the broad discretion of the district court to determine whether evidence is relevant and admissible. State v. Woods (1995), 272 Mont. 220, 222, 900 P.2d 320, 321 (citation omitted). Absent an abuse of discretion, we will not overturn the courtþs determination. Woods, 900 P.2d at 321.

This Court has held that a defendant charged with driving under the influence of alcohol is entitled to the procedural safeguards contained within the administrative rules. Woods, 900 P.2d at 322 (citing State v. West (1992), 252 Mont. 83, 89, 826 P.2d 940, 944; State v. OþBrian (1989), 236 Mont. 227, 229, 770 P.2d 507, 508.) See also State v. McDonald (1985), 215 Mont. 340, 346, 697 P.2d 1328, 1331 (þWe hold that a criminal defendant on a charge of driving under the influence is entitled to the procedural safeguards of the Administrative Rules of Montana.þ) Where the State fails to lay a proper foundation by establishing compliance with the administrative rules, we have held that the results of the breath test analysis are inadmissible. Woods, 900 P.2d at 322; McDonald, 697 P.2d at 1331-32.

Woods argues that the State failed to lay a proper foundation and that therefore his breath test results were inadmissible for two reasons. First, he argues that the

ethyl
alcohol solution in lot number 94140 was not an þapprovedþ solution.  He contends that
although the division of forensic science had initially approved the solution in 1994, the
solution lost its approval when the manufacturerþs warranty expired in April 1995, ten
months prior to Woodsþ test.  Woods reasons that because the approval period had
expired, the field certification of the Intoxilyzer 5000 was invalid.

Woods is correct in noting that the regulations require the State to certify the
breath analysis instruments for accuracy using an þapprovedþ ethyl alcohol solution.  The
regulation pertaining to field certification provides in part:

Field Certification  (1) Breath analysis instruments shall be field certified
for accuracy at least once every seven (7) days . . . using a solution of
ethyl alcohol approved by the division of forensic science and using the
field certification report form for the breath analysis instrument being
certified.

(a)   A field certification shall consist of a series of no less than
two analyses using an approved ethyl alcohol solution.

(b)   A field certification is valid when the results of the approved
ethyl alcohol solution test is at target value plus or minus one hundredth
(.01) grams per two hundred and ten liters. . . .

(c)   The approved ethyl alcohol solution will not be used for more
than 20 analyses or longer than two months after its first date of use, which
ever comes first.

Rule 23.4.213, ARM (emphasis added).

However, Woodsþ argument that the approval period expired when the warranty
expired implies that it is the manufacturer and not the State that grants þapproval.þ
Woods is mistaken.  The regulations squarely place the granting and withdrawing of
þapprovalþ within the province of the division of forensic science.  Rule 23.4.212, ARM
provides in part:

Breath Analysis Instrumentation And Associated Equipment  (1)  All
manufacturers/vendors of breath analysis instruments, associated equipment,
and supplies are required to submit such breath analysis instrumentation,
associated equipment, or supplies to the division of forensic science for
formal state approval prior to introduction into the state of Montana.

. . .

(3)   All associated equipment, and supplies which have met the
approval criteria established by the division of forensic science shall be kept
on file at the division of forensic science.

(4)   The division of forensic science reserves the right to withdraw
the approval status of any breath analysis instrument, associated equipment,
or supply . . . if the manufacturer/vendor fails to comply with the

provisions set forth in the approval criteria or regulations pertaining to the manufacturers/vendors responsibilities to the state of Montana. [Emphasis added.]

Nothing in the regulations defines "approval" to mean the manufacturer's warranty period, and nothing in the regulations provides that the approval period expires when the warranty expires.

Woods also points to the State's test of the solution in June 1995, and emphasizes that the test occurred eight months prior to Woods' test. He implies that the State was obligated to retest the solution prior to his breath test in February 1996. But the rules do not require the State to "pre-approve" the solution at any time after granting the initial approval. They did not even require the test in June 1995. Upon testing the solution in June 1995, the State concluded in any event that "even after years of storage the solutions do not lose their integrity to provide an accurate and reliable method of verify[ing] the accuracy of a properly operating and calibrated instrument."

In sum, Woods fails to point to any authority to support his argument that the solution used to certify the intoxilyzer had lost its "approval" status. We hold that the District Court did not abuse its discretion when it admitted Woods' test result over this objection.

Woods next argues that the State did not adhere to the administrative rules when it failed to use a fresh solution to test the instrument after the instrument had tested outside the specified range on January 24, 1996. Instead of using a fresh solution, the State used bottle number 1673 to certify the instrument on February 6, 1996. The State concedes that the administrative rule was not followed to the letter. However, it cites § 46-20-701(2), MCA, which provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded," and contends that Woods suffered no prejudice.

Woods is technically correct. The rules require the State to conduct a field certification analysis using a fresh solution where the results of a prior analysis were outside the range specified by the rules. Rule 23.4.213, ARM, provides:

(d) Results of a field certification analysis outside the range specified in this rule shall be confirmed by the breath test specialist/senior operator, or designee using a fresh solution. If the test results are still out of the specified range, the breath analysis instrument will be removed from service and the division of forensic science shall be notified. [Emphasis

added.]

Nevertheless, we agree with the State that Woods suffered no prejudice under the facts of this case. The rule requires the State to use a fresh solution to confirm the test result in order to ensure that something is not wrong with the solution itself before removing the instrument from service. In this case, however, the problem clearly lay with the Intoxilyzer 5000 and not with the solution. When the results of the field certification in late January 1996 indicated that the Intoxilyzer 5000 was outside of the specified range, the instrument was taken out of service. The crime lab certified the accuracy of the instrument on February 6, two days before Woods took the breath test. Additionally, the instrument tested accurate several times that same day using the solution from bottle number 1673. Finally, on February 9, 1996, the day after Woods took his test, the results of the certification test using a new solution also indicated that the Intoxilyzer 5000 was accurate. Notwithstanding the fact that a new solution was not used prior to Woodsþ test, the evidence indicates the problem lay solely with the instrument.

Accordingly, we hold that the Stateþs failure to faithfully adhere to the regulations in this case did not prejudice Woods or violate his substantial rights. Indeed, Woods does not even contend that the Stateþs failure prejudiced him. We thus hold that the District Court did not abuse its discretion when it held that the breath test results were admissible.

We stress, however, that our holding today is limited to the unique factual circumstances present in this case. Our holding does not entitle the State to disregard the important procedural safeguards embodied in the administrative rules. In the future this Court will continue to hold that breath analysis results are inadmissible where the State fails to lay a proper foundation.

Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson specially concurs.

I concur in our decision. I question, however, whether we should continue to cite our decision in State v. McDonald (1985), 215 Mont. 340, 697 P.2d 1328, as authority for the rule that a criminal defendant on a charge of driving under the influence is entitled to the procedural safeguards of the administrative rules. While there is nothing wrong with this rule, our decision in McDonald relied for this proposition to a great extent on the procedural and foundational requirements of õ 61-8-404(1)(b), MCA(1983)-- evidently because McDonald's DUI was committed on August 12, 1983, and because his case was not decided by this Court until April 2, 1985. McDonald, 697 P.2d at 1329-31. We held that "[t]o admit evidence of blood alcohol content and a test report, the State must lay a foundation pursuant to õ 61-8-404, MCA, which incorporates [23.3.931 ARM]." McDonald, 697 P.2d at 1331.

The problem is that the version of õ 61-8-404, MCA, which we cited was significantly different than the version of this statute that actually applied to McDonald's case. Section 61-8-404, MCA(1981), was applicable to McDonald's case, and that version of the statute did not contain the procedural safeguards and foundational requirements referred to. Subsection (1)(b), which contains those requirements was added to the statute by the 1983 Legislature. See 1983 Mont.Laws 698. This amendment did not, however, become effective until October 1, 1983. See 1983 Mont.Laws 698; õ 1-2-201, MCA; Laws of Montana (1983), Vol. III at 2213. Thus, the statutory procedural and foundational requirements that we referred to did not apply until months after McDonald was given the breath-alcohol test at issue. While the rule is correct, McDonald is not particularly good authority for it and, in my view, this case should no longer be cited.

/S/ JAMES C. NELSON


Justice Karla M. Gray concurs in the foregoing special concurrence.


/S/ KARLA M. GRAY