No. 98-335

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 163N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

REGINALD SHANE COLBY,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John S. Henson, Judge presiding.

No

COUNSEL OF RECORD:

For Appellant:

Mark E. Jones, Attorney at Law, Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,

Jennifer Anders, Assistant Attorney General, Helena, Montana

Fred R. VanValkenburg, Missoula County Attorney

Karen S. Townsend, Deputy Missoula County Attorney, Missoula, Montana

Submitted on Briefs: March 11, 1999

Decided: July 8, 1999

Filed:

No

_____

Clerk


Justice W. William Leaphart delivered the Opinion of the Court.


**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. Defendant Reginald S. Colby (Colby) appeals from the judgment and order of the Fourth Judicial District Court, Missoula County.**

**¶3. We affirm.**

**¶4. We restate the issue as follows:**

**¶5. Whether the District Court abused its discretion in admitting the results of a breath test.**

Standard of Review

**¶6. A district court has broad discretion to determine whether evidence is relevant and admissible. State v. Woods (1995), 272 Mont. 220, 222, 900 P.2d 320, 321. Absent an abuse of discretion, we will not overturn a district court's admission of evidence. *Woods*, 272 Mont. at 222, 900 P.2d at 321.**

No

## Factual and Procedural Background

¶7. Very early one morning in November, 1996 Montana Highway Patrol Officer Monzon found Colby asleep in his car in a northbound lane of traffic on Reserve Street in Missoula, Montana. Officer Monzon requested backup. When Officer Mills arrived, he observed that Colby had bloodshot eyes, that Colby's speech was sometimes slurred, and that Colby smelled of alcohol. Colby admitted that he had been drinking alcohol. Officer Mills had Colby attempt several field sobriety tests. Based on Colby's performance of those tests, Officer Mills concluded that Colby was likely under the influence of alcohol. Officer Mills also administered a preliminary breath test (PBT) to Colby; Colby scored a 0.127 blood alcohol content (BAC). Officer Mills arrested Colby and brought him to the Missoula Police Department, where Colby agreed to take a breath test. A device known as an Intoxilyzer 5000 measured a BAC in Colby of 0.116. A video camera recorded Officer Mills as he read aloud the results of the breath test. However, the printer attached to the Intoxilyzer 5000 malfunctioned and did not print out the breath test results.

¶8. In May, 1997 Colby was found guilty of Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs, 2nd Offense, a misdemeanor, in Justice Court. Colby appealed the judgment and verdict of the Justice Court to District Court, where he had a jury trial in April, 1998. At trial Colby objected that there was insufficient foundation for the admission of the breath test results. The District Court admitted the breath test results. At the close of the trial, the jury found Colby guilty as charged. The District Court sentenced Colby to six months jail with all but seven days suspended. Colby appeals from that judgment and verdict.

¶9. Whether the District Court abused its discretion in admitting the results of a breath test.

¶10. Colby argues that there was insufficient foundation for the Intoxilyzer 5000 breath test results (hereafter, the breath test results). Relying on State v. Woods (1995), 272 Mont. 220, 900 P.2d 320, Colby argues that to admit BAC evidence, the State must lay a foundation showing compliance with Montana's administrative rules. Colby argues that in three respects, Montana's administrative rules were not followed. First, Colby argues that under Rule 23.4.201(31), ARM, a breath test is not complete until a printed record is produced. Rule 23.4.201(31), ARM, defines breath

analysis tests and provides that they are complete when "a final result is obtained and a printed record is produced by the breath test instrument." Colby argues further that because the Intoxilyzer 5000 did not produce a printed record of his breath test, the Intoxilyzer 5000 malfunctioned and his breath test results should not have been admitted.

¶11. Second, Colby argues that there was insufficient foundation for the breath test results because the State failed to establish that the ethyl alcohol solution used to calibrate the Intoxilyzer 5000 met the requirements of Rule 23.4.213, ARM. Rule 23.4.213, ARM, requires the State to certify the accuracy of breath analysis instruments with ethyl alcohol solutions and provides that an "ethyl alcohol solution will not be used for more than 20 analyses or longer than two months after its first date of use, which ever comes first." Rule 23.4.213(c), ARM. Finally, Colby argues that there was insufficient foundation for the breath test results because the State failed to establish that Officer Mills, who administered the breath test, had been certified as required by Rule 23.4.218(1), ARM. Colby appears to argue that in order to lay a foundation for the admission of the breath test results, the State had to provide written proof of Officer Mills' certification.

¶12. The State responds that even if the District Court erred in admitting the breath test results, the error was harmless because sufficient independent evidence supported the jury's verdict. The State argues further that Colby failed to preserve his objection to the lack of printed test results for the breath test. We agree: the record shows that Colby did not object on that ground. We conclude that Colby has failed to preserve this issue for our review. *See* Unified Industries, Inc. v. Easley, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15 (concluding "[t]he general rule in Montana is that this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory") (citation omitted).

¶13. The State argues that Montana's administrative rules do not require that the State produce written documentation that an ethyl alcohol solution has been used in compliance with Rule 23.4.213, ARM. The State further contends that Colby has not shown that he has been prejudiced because of the State's failure to establish the age of the ethyl alcohol solution that was used to certify the accuracy of the Intoxilyzer 5000. Finally, the State appears to argue that Officer Mills' testimony established that he was qualified to administer the breath test.

¶14. We have previously held that to lay a foundation for the admission of breath test results, the State must establish compliance with Montana's administrative rules. In State v. Woods (1997), 285 Mont. 124, 947 P.2d 62, we concluded:

a defendant charged with driving under the influence of alcohol is entitled to the procedural safeguards contained within the administrative rules. Where the State fails to lay a proper foundation by establishing compliance with the administrative rules, we have held that the results of the breath test analysis are inadmissible.

*Woods*, 285 Mont. at 127, 947 P.2d at 63 (citations omitted).

¶15. In the present case, however, we conclude that apart from the breath test results, there was very substantial evidence from which a jury could conclude that Colby was driving under the influence of alcohol in violation of § 61-8-401, MCA. The record establishes that Colby was discovered sound asleep in a northbound traffic lane of Reserve Street in Missoula. Colby's eyes were red and he smelled of alcohol. He slurred some of his words. He performed poorly in several roadside field sobriety tests. He scored a 0.127 on the PBT.[1] Moreover, he admitted that he had been drinking. There was overwhelming evidence that Colby was driving under the influence of alcohol.

¶16. Thus, we hold that to the extent that the District Court may have abused its discretion in admitting the breath test results, the error was harmless because of the independent overwhelming evidence that Colby was driving under the influence of alcohol. *Compare* State v. Huerta (1997), 285 Mont. 245, 252, 947 P.2d 483, 487 (holding that when record establishes guilt a new trial will not be granted unless error impaired right to fair trial); State v. Arlington (1994), 265 Mont. 127, 141, 875 P.2d 307, 316 (concluding that although district court erroneously limited cross-examination, error was harmless because of overwhelming evidence that victim was beaten). Moreover, we note that Colby makes no claim that the admission of the breath test results has prejudiced his substantive rights. *Compare* § 46-20-701(2), MCA (providing that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded").

¶17. The verdict and judgment of the District Court are affirmed.

/S/ W. WILLIAM LEAPHART


We concur:


/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER


Justice James C. Nelson dissents.


**¶18. I disagree with the Court's harmless error analysis. First, we note that Colby scored a 0.127 on the PBT. We have held that the results of a PBT (preliminary alcohol screening test) taken pursuant to § 61-8-409, MCA (1995), the statute applicable at the time of Colby's arrest,**

are not substantive evidence of the amount of alcohol present in a person's body, but instead are an "estimate" of alcohol concentration for the purpose of establishing probable cause to believe that a person is under the influence of alcohol prior to making an arrest for violation of §§ 61-8-401, -405, or 410, MCA.


*State v. Strizich* (1997) 286 Mont. 1, 12, 952 P.2d 1365, 1372. *See also* § 23.4.201(7)(b), ARM (PBT test results "are to be considered as probable cause evidence only"). Accordingly, while Colby's PBT test result was relevant to the determination of probable cause for his arrest for DUI, the result was not substantive evidence of his guilt which the jury was entitled to consider. For this same reason, it is improper that we factor the test result into our conclusion that "[t]here was overwhelming evidence that Colby was driving

under the influence of alcohol." The test result would not have been properly considered as part of that evidence.

**¶19. Second, regardless of the quantum of admissible non-breath test evidence that might be left, we have held that the improper admission of BAC evidence of alcohol consumption is not harmless error as it has a "'natural tendency' to infect the entire proceedings with an unfairness which can only be remedied with a new trial."** *Havens v. State* **(1997), 285 Mont. 195, 201, 945 P.2d 941, 944.** *See also State v. Ingraham***, 1998 MT 156, ¶¶ 37-51, ___ Mont ___, ¶¶ 37-51, 966 P.2d 103, ¶¶ 37-51 (citing** *Havens,* **285 Mont. at 200, 945 P.2d at 944); and** *Simonson v. White* **(1986), 220 Mont. 14, 23, 713 P.2d 983, 988 (holding that, in his trial for negligent homicide, the improper admission of prescription drugs detected in defendant's system following an automobile accident, but which were not shown to have had any effect whatsoever on his ability to drive was by its very nature prejudicial rather than harmless error, thus requiring a new trial).**

**¶20. It goes without saying that evidence of an intoxilizer machine breath test and testimony as to the test results given by a certified examining officer is** *the* **most convincing, probative and damaging evidence in a DUI case. Were this not so, the legislature would not have imposed the severe sanctions for refusing to take the test that it did.** *See* **§§ 61-8-402 and -404, MCA.**

**¶21. Given our case law precedent and the obvious prejudicial effect of improperly admitting evidence of breath test results, I am not prepared to hold, as is the majority, that to the extent that the District Court may have abused its discretion in admitting this evidence, the error was harmless beyond a reasonable doubt.**

**¶22. I dissent.**

/S/ JAMES C. NELSON

---

1. [1] We note that Colby did not object to the admission of the PBT evidence.