No. 91-310

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

ARNOLD WEST,

       Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Richard J. Carstensen, Attorney at Law,
Billings, Montana

       For Respondent:

              Honorable Marc Racicot, Attorney General,
Deanne L. Sandholm, Assistant Attorney General,
Helena, Montana: John S. Forsythe, Rosebud
County Attorney, Forsyth, Montana

FILED

FEB 25 1992

Filed:

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: October 31, 1991

Decided: February 25, 1992

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Defendant Arnold West was convicted of driving under the influence of alcohol by a jury trial in the Montana Sixteenth Judicial District Court, Rosebud County. Defendant appeals the conviction. We affirm the District Court.

Defendant raises the following issues for appeal.

1. Whether the District Court erred when it denied defendant's motion in limine to prohibit two witnesses' testimony because the State failed to provide defendant with a copy of the statement of one of the witnesses.

2. Whether the District Court erred when it refused defendant's jury instruction defining a voluntary act.

3. Whether there was sufficient foundation to introduce into evidence the results of an alcohol breath test.

4. Whether the State's references to presumptions based on the results of an alcohol breath test prejudiced the defendant.

5. Whether the Justice Court had original jurisdiction because the penalty imposed for a DUI conviction exceeds the definition of a misdemeanor.

6. Whether the District Court erred when it excluded jury instructions that the State must prove that the defendant acted purposely and knowingly.

On the evening of October 18, 1989, Sharyle Lallatin and her sister Caryle Jenrich were leaving a movie theater in Colstrip, when they noticed defendant in a nearby parking lot. In an effort to gain their attention, he yelled and waved at them. The women

did not understand what the defendant was saying and they quickly proceeded to their car. As they were leaving the scene, the women saw the defendant back his pickup into a parked car. Lallatin left the car in order to obtain the defendant's license number. She was able to obtain the number and reported the incident to the sheriff's office.

In the meantime, Jenrich followed the defendant so that she could report the location of the defendant. After a few minutes, the defendant pulled into the parking lot of a bowling alley. Jenrich drove to the sheriff's office and reported the incident, as well as the location of the defendant, to the dispatcher. while at the sheriff's office, Jenrich prepared and signed a written statement. She was then given a copy of her statement.

Rosebud County Deputy Sheriff Charles Hartman and Officer Mitchell Moe responded to the call. When they arrived at the bowling alley, they located the defendant's pickup in the back parking lot. The license plates of the vehicle were registered in the defendant's name. Finding the defendant sitting at a bar in the bowling alley talking to a waitress, the officers escorted him outside. After being questioned, the defendant admitted to being at the parking lot near the movie theater and driving to the bowling alley. The officers observed that the defendant's speech was extremely slurred, his walking was staggered, and he emitted an odor of an alcohol. The waitress told one of the officers that she refused to serve the defendant alcohol because of his intoxicated state.

Officer Hartman returned to the scene of the hit and run but could not find any physical evidence that a car had been struck. Except for the two women, no one else reported to the sheriff's office that a vehicle had been hit on that night.

Officer Moe performed the usual field sobriety tests on the defendant in the parking lot of the bowling alley. Defendant failed the horizontal nystagmus test and could not perform the one-leg-stand balancing test. The defendant was placed under arrest for driving under the influence of alcohol in violation of § 61-8-401, MCA (1989). Approximately one and one-half hours had elapsed from the time the women witnessed the accident to the time defendant was arrested.

On January 12, 1990, defendant was initially found guilty in a non-jury trial before a justice of the peace. Defendant appealed the case to District Court and was convicted by a six person jury on July 12, 1990. On September 5, 1990, defendant appealed his conviction. On January 30, 1991, we remanded the case to District Court because the court gave a jury instruction on mandatory conclusive presumption of intoxication which was contrary to our holding in State v. Leverette (1990), 245 Mont. 124, 799 P.2d 119. On April 9, 1991, defendant was tried and convicted of the same offense. On April 10, 1991, the court entered its judgment. Defendant was fined $300, given a six month suspended sentence, ordered to pay costs, and required to attend an alcohol treatment program. Defendant appeals the conviction and judgment of the District Court.

## I

Whether the District Court erred when it denied defendant's motion in limine to prohibit two witnesses' testimony because the State failed to provide defendant with a copy of the statement of one of the witnesses.

On the morning of the second District Court trial, defense counsel filed a motion in limine to exclude the testimony of Jenrich and Lallatin because the State failed to produce a copy of Jenrich's written statement which was given to the sheriff's office on the night of the incident. The District Court denied the motion and ordered the State to question the witnesses as to whether either of them had a copy of any such statement. Jenrich testified that she had thrown away her copy and no statement was ever produced. Defendant argues that allowing the testimony of the two witnesses constituted prejudicial error.

Section 46-15-322(1)(a), MCA (1989), requires that the State disclose "a list of the names and addresses of all persons whom the prosecutor intends to call as witnesses in the case-in-chief, together with their relevant written or recorded statements." There is a continuing duty placed upon the prosecution throughout the course of the criminal proceedings to disclose relevant materials. Section 46-15-327, MCA (1989). The statutes go into effect when "the State actually develops the knowledge of a specific act, fact, or information that exculpates the defendant." State v. Shaver (1988), 233 Mont. 438, 447, 760 P.2d 1230, 1235.

5

This Court established the following standard for lost or destroyed evidence:

> [T]hat when the State, due to negligence, loss, replacement or destruction, is unable to produce certain physical evidence in the prosecution of the case, reversal of a conviction is not necessary where the actual objects were not vital to the defense, were not exculpatory in nature, and the result would not have been affected by their introduction.

State v. Halter (1989), 238 Mont. 408, 412, 777 P.2d 1313, 1316 (citing State v. Ronald Lee Craig (1976), 169 Mont. 150, 545 P.2d 649).

In California v. Trombetta (1984), 467 U.S. 479, 488-89, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 422, the United States Supreme Court added the following:

> Whatever the duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality [citation omitted], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

In this case, defense counsel had other reasonable means to obtain comparable evidence. At the first District Court trial, Jenrich testified that she had a copy of the statement that she had given to authorities. Defense counsel had approximately nine months before the start of the second trial to either interview the witness or request the county attorney to provide him with a copy of the statement. Neither the sheriff's office nor the county attorney had an original or copy of the statement in their possession. Jenrich testified that she had thrown away her copy of

6

the statement.  In addition, defense counsel failed to allege the exculpatory value of the evidence, or how the introduction of the written statement could have changed the result of the trial.  We hold that the District Court did not err in denying defendant's motion in limine.

## II

Whether the District Court erred when it refused Defendant's jury instruction defining a voluntary act.

Defense counsel proposed the following jury instruction:

> In order to prove the charge of Driving a Motor Vehicle While Under the Influence of Alcohol, the State must prove beyond a reasonable doubt that the offense was committed knowingly by such Defendant as a voluntary act.
>
> The word "act" means a thing done or that which is done.  It includes any bodily movement, any form of communication and, where relevant, a failure or omission to take action.  [Emphasis added.]

In State v. McDole (1987), 226 Mont. 169, 175, 734 P.2d 683, 686, we held that **"[d]riving** under the influence is an absolute liability offense not requiring the proof of the mental state by the State."   Section 61-8-401(7), MCA (1989), states that "[a]bsolute liability as provided in 45-2-104 will be imposed for a violation of this section."

The basic reason for not requiring the state to prove mental intent in DUI cases is that:

> [S]ituations could arise in which defendants could not be convicted under the statute because they were too intoxicated to form the requisite intent.  The paradoxical and absurd result would be that the more intoxicated the driver became the better his chances of avoiding liability under the statute.

7

McDole, 734 P.2d at 686 (quoting Erwin, Defense of Drunk Driving Cases, § 1.05 (1986)).

The proposed jury instruction required the State to prove the defendant knowingly committed the offense. Absolute liability statutes do not require proof of a mental state. We hold the District Court did not err in refusing the jury instruction defining a voluntary act.

## III

Whether there was sufficient foundation to introduce into evidence the results of an alcohol breath test.

When a defendant is charged with driving under the influence of alcohol, he is "entitled to any procedural safeguards in the Administrative Rules of Montana." State v. O'Brian (1989), 236 Mont. 227, 229, 770 P.2d 507, 508. Section 23.4.209 ARM (1989) required:

> (1) All models of breath-testing instruments used to administer testing according to section 61-8-405 MCA, must be approved by the division. The models operated by certified operators and/or operator supervisors prior to and on the effective date of this rule are deemed approved by the division.

> (2) Each breath-testing instrument must be inspected by the division, and the accuracy verified by the division, prior to installation of the instrument.

Defendant contends that the State failed to lay proper foundation proving that the intoxilyzer was properly tested and certified prior to administering the test on the defendant.

Officer Moe testified that he was certified to operate the intoxilyzer and that he calibrated and tested the instrument to

8

insure that it would accurately measure the defendant's breath. He also testified that in order for the intoxilyzer to take an accurate reading, the instrument must be calibrated at **.100.** He then testified, and the record reflects, that the instrument was properly calibrated at **.100** immediately prior to administering the test to defendant.

In addition, the record contains a letter dated May 11, **1990,** from the Forensic Science Division of the Justice Department. It stated that the division had inspected and verified the intoxilyzer in the Rosebud County Sheriff's office and that it met all of the Division's requirements at the time of installation. The letter also stated that Officer Moe was a certified operator because he had completed the Breath Test for Intoxilyzer School which was required before he completed his police training in **1989.**

We have stated "that the District Court has latitude of discretion in passing on the admissibility of evidence." State v. Hall **(1989),** 244 Mont. **161, 169, 797** P.2d **183, 188.** We will only overturn the district court's determination on the admissibility of evidence when there has been an abuse of discretion. <u>Hall</u>, **797** P.2d at **188.** We hold there was sufficient foundation and that the District Court did not abuse its discretion in admitting the results of the alcohol breath test.

## IV

Whether the State's references to presumptions based on the results of an alcohol breath test prejudiced the defendant.

9

Defendant alleges that the State made continual references and placed evidence before the jury relating to a presumption of intoxication.  In its opening statement, the prosecution stated:

> And then a central piece of evidence would be the results of a breathilizer [sic] test.  And we expect that this evidence to be introduced, will show that Mr. West, blowing into the machine, registered a point two-seven alcohol content.  And this will be an important number to keep in mind when you receive the Court's instructions as to what level is the <u>presumption of intoxication</u>. [Emphasis added.]

Officer Moe testified in direct examination to the following:

> Q.    How did he exhibit that lack of understanding?
>
> A.    He was just--when I asked him to come along, or asked him back to my car, he didn't know what I was asking, and he just acted very intoxicated.
>
> MR. CARSTENSEN:   I object, Your Honor, again, and ask that the answer be stricken.
>
> MR. FORSYTHE:  As to intoxicated?
>
> THE COURT:   Sustained as to the origin [sic] which indicated he was very intoxicated.
>
> Q.    So that we don't keep going through this, this is an ultimate conclusion for the jury and we'll ask you not to state the standard of intoxication . . . .
>
> . . . .
>
> Q.    And your testimony was that you found the maximum of six points, three for each eye: is that correct?
>
> A.    Yes.  The normal is if you receive four points, they're usually at point one.  And then the forty-five degree angle is, if it's there they're usually over about point one.
>
> MR. CARSTENSEN:  Your Honor, I object and move to strike the answer: it's unresponsive and not proper foundation.
>
> COURT:    Do you have an offer of proof?

MR. FORSYTHE: No, I'll withdraw that particular question and answer as to the alcohol levels.

THE COURT: The jury is directed to disregard the testimony as with respect to any particular percentage of alcohol level.

In closing, the State made the following argument:

He was at 2.7, 2.7 times .1. *So* you know, you have powerful evidence of intoxication which is based on scientific results of tests of the air that the defendant breathed. It's incontrovertible evidence.

MR. CARSTENSEN: I object. I don't believe that's the law in Montana.

THE COURT: Sustained. The jury will disregard the last statement of Mr. Forsythe that this is incontrovertible. You do have the instructions and . . . .

. . . .

Obviously, when your ability to operate a motor vehicle is diminished or less than what it would be if you were totally sober, the State and the citizens of this state have an interest that you do not operate the vehicle out in public ways in that condition.

MR. CARSTENSEN: I object, Your Honor. I don't believe that's the state of the law in Montana.

THE COURT: Well, the state of the law in Montana is stated in the instructions. And the jury is cautioned not to accept what either counsel says the law is, but to take the law from the instructions.

In addition, defendant alleges that a statement made by Officer Moe in the video tape contained a reference that defendant's alcohol breath test was over the legal limit.

We have previously stated that when counsel opposes the admission of evidence and the District Court sustains counsel's objection, strikes the evidence from the record, and instructs the jury to disregard the evidence, the error that is committed is

11

presumed cured.  State v. Staat (Mont. 1991), **48** St.Rep 1041, 1044 (Staat 11).  The District Court sustained defendant's objections relating to any possible references to presumptions of intoxication and admonished the jury.  The District Court also gave the following jury instruction which read, in part:

> If the defendant has an alcohol concentration in his blood of 0.10 or more at the time of the alleged offense, you are permitted, but not required to infer that he was under the influence of alcohol.  It is your exclusive provence to determine whether the facts and circumstances shown by the evidence warrant the inference to be drawn by you.

In <u>Leverette</u>, **799** P.2d at 125, we held that:

> The solution to the due process problems of using presumptions in jury charges is not, as was attempted in this case, to make them burden-of-production shifting presumptions.  The solution is to make the presumptions unambiguously permissive.

The above instruction is consistent with our holding in <u>Leverette</u> that presumptions or inferences must be "unambiguously permissive." We hold that any error made by the State's references relating to the presumption of alcohol was cured by the District Court's admonishment of the jury and the reading of the above instruction.

With regard to the statement Officer Moe made in the video tape referring to defendant's breath exceeding the legal limit, there was no objection made to the playing of the video in front of the jury.  "Failure to make a timely objection during trial constitutes a waiver of the objection . . . ."  Section **46-20-104,** MCA **(1989).**  We hold that there was no error in admitting the video tape.

12

## V

Whether the Justice Court had original jurisdiction because the penalty imposed for a DUI conviction exceeds the definition of a misdemeanor.

Defendant argues that because he was fined $300, assessed costs, given a six month suspended sentence, and was required to attend an alcohol treatment program which has no particular time limit, his potential sentence could exceed one year.

The penalty for a second conviction for driving under the influence of alcohol or drugs requires "a fine of not less than $300 or more than $500 and by imprisonment for not less than 7 days, at least 48 hours of which must be served consecutively, or more than 6 months." In addition to the incarceration and fine, § 61-8-714(4), MCA (1989), requires in part:

> [T]he defendant shall complete an alcohol information course at an alcohol treatment program approved by the department of institutions, which must include alcohol or drug treatment, or both.

The Idaho Supreme Court addressed a similar issue in State v. Pruett (Idaho 1969), 428 P.2d 43. The defendant argued that suspending the license of a person convicted of reckless driving increased the penalty for such offense beyond the jurisdiction of the Justice Court. The Court held that:

> [T]he revocation of a driver's license is not a part of the *penalty* provided for violation of our statute prohibiting driving while intoxicated such that the jurisdiction of the justice court was exceeded. The conclusion therein that the deprivation of a driving

13

right or privilege is for the protection of the public and not punishment of the individual . . . .

Pruett, 428 P.2d at 49.

The purpose of requiring attendance at an alcohol or drug treatment program is to protect the public from habitual DUI offenders. The legislature mandated rehabilitation as well as punishment in an effort to reduce the number of fatalities related to drinking and driving on Montana's roads and highways. Requiring a DUI offender to attend an alcohol treatment program serves the purpose of protecting the public and not punishing the individual.

With regard to defendant's allegation that paying a $300 fine and costs totalling more than $500 exceeds the maximum penalty imposed for misdemeanor offenses, Montana's criminal code recognizes a distinction between the assessment of fines and costs. Fines are a monetary punishment imposed when an individual pleads guilty or is convicted of a criminal offense. Section 46-18-231, MCA (1989). Cost are paid by a convicted defendant to reimburse the State for expenses "specifically incurred by the prosecution in connection with the proceedings against the defendant." Section 46-18-232(1), MCA (1989). In addition, costs are imposed only at the sole discretion of the district court judge. State v. Pease (1987), 227 Mont. 424, 434, 740 P.2d 659, 665.

We hold that the imposition of a $300 fine, costs, incarceration, and treatment included in defendant's sentence does not amount to a felony and that the Justice Court had original jurisdiction.

## VI

Whether the District Court erred when it excluded jury instructions that the State must prove that the defendant acted purposely and knowingly.

Defendant based this contention on the premise that driving under the influence is a felony. For reasons discussed above, we hold that the District Court did not err in refusing jury instructions requiring the State to prove mental intent.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

February 25, 1992

<u>CERTIFICATE OF SERVICE</u>

**I** hereby certify that the following order was sent by United States mail, prepaid, to the following named:

RICHARD J. CARSTENSEN
Attorney at Law
P.O. **Box** 2093
Billings, MT 59103-2093


HON. MARC RACICOT, Attorney General
           , Assistant
Justice Building
Helena. MT 59620

MARVIN QUINLIN, County Attorney
Rosebud County
Drawer 69
Forsyth, MT 59327


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
     Deputy