No. 97-231

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 30

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LAWRENCE EARL SWEET,

Defendant and Appellant.

FILED

FEB 12 1998

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Deirdre Caughlan, Attorney at Law, Butte, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
Jennifer Anders, Assistant Attorney General;
Helena, Montana

Robert M. McCarthy, Butte-Silver Bow County Attorney;
Samm Cox, Deputy County Attorney; Butte, Montana

Submitted on Briefs: December 18, 1997

Decided: February 12, 1998

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 Lawrence Earl Sweet was charged by information filed in the District Court for the Second Judicial District in Silver Bow County with two counts of criminal sale of dangerous drugs in violation of § 45-9-101, MCA (1995). Following a jury trial, Sweet was convicted of both offenses and sentenced to two consecutive ten-year sentences. Sweet appeals the jury's verdict and the District Court's order which denied his motion to dismiss. We affirm the jury's verdict and the judgment of the District Court.

¶2 The issues on appeal are:

¶3 1. Did the District Court err when it denied Sweet's motion to dismiss based on the State's alleged negligent suppression of evidence?

¶4 2. Was there sufficient evidence to support the jury's verdict?

## FACTUAL BACKGROUND

¶5 Officer Jerry Stradinger, a detective with the Butte-Silver Bow Sheriff's Department, recruited a confidential informant to purchase drugs in the Butte-Silver Bow community as part of Detective Stradinger's drug sale investigations. The confidential informant was Dennis O'Donnell, a former and subsequent drug abuser.

¶6 On November 2, 1995, Stradinger met with O'Donnell to effectuate a drug purchase. Stradinger searched O'Donnell and his vehicle, then fitted him with a transmitting device known as a "body wire." The body wire allowed Stradinger to monitor any drug transaction or conversation which occurred in O'Donnell's presence. Stradinger gave O'Donnell $140

2

with which to purchase the drugs. O'Donnell proceeded to the location where the drug purchase was to be made. Stradinger followed O'Donnell in his own vehicle, monitored O'Donnell's activities through the body wire, and tape-recorded conversations transmitted from the body wire.

¶7     The intended drug purchase at the first residence to which O'Donnell was sent did not occur; however, while at the first residence O'Donnell arranged to buy drugs from an individual he identified as Lawrence Earl Sweet. Sweet's residence was located in Walkerville, Montana, a municipality north of Butte. O'Donnell left the first location and indicated to Stradinger by way of the body wire that he was going to Sweet's house where a drug sale would take place.

¶8     Stradinger followed O'Donnell to Sweet's residence and began surveillance nearby. He watched O'Donnell enter Sweet's home and heard him clearly identify Sweet on the body wire. According to Stradinger, O'Donnell purchased marijuana from Sweet and left the house. Stradinger followed O'Donnell to a prearranged meeting place where O'Donnell gave him four bags, each containing one-eighth of an ounce of marijuana.

¶9     On November 11, 1995, Stradinger again fitted O'Donnell with a body wire and set up a surveillance at a distance from Sweet's home. On that occasion, O'Donnell made a second purchase of marijuana from Sweet. At trial, Stradinger testified that he could not recall whether he searched O'Donnell prior to the second transaction. He also testified that prior to arriving at Sweet's residence in Walkerville, on that occasion, O'Donnell went into

3

a convenience store "for change." When they arrived at Sweet's house, Stradinger recorded the conversation picked up by O'Donnell's body wire. He heard O'Donnell knock at the door to the residence, enter, and identify Sweet.

¶10 During the second transaction, Sweet told O'Donnell that he did not have anything to sell and that he would have to make a phone call. Sweet sent O'Donnell back outside to wait. According to Stradinger, fifteen minutes later Sweet came out of his house and summoned O'Donnell to Sweet's garage, where a drug transaction occurred. O'Donnell left Sweet's residence and Stradinger followed him to the prearranged meeting place where O'Donnell gave Stradinger two one-eighth ounce bags of marijuana.

¶11 Sweet was charged on April 22, 1996, by information filed in the District Court for Silver Bow County, with two counts of felony criminal sale of dangerous drugs in violation of § 45-9-101, MCA (1995). Sweet pled not guilty to both offenses. On September 25, 1996, following the State's refusal to disclose O'Donnell's identity without an order from the District Court, Sweet field a motion for the disclosure of O'Donnell's identity and location. On September 27, 1996, the District Court entered an order which advised:

> [T]he State is hereby ordered to disclose the identity of the informant, the location of the informant if known, and any documents, statements or information within its control that relate to the credibility of the informant. Failure to abide by this order will result in dismissal of this case

¶12 On September 30, 1996, the State formally disclosed the identity of Dennis O'Donnell and gave his last known home address. On October 2, 1996, the State informed Sweet that

4

O'Donnell had more recently been located at the Montana Chemical Dependency Center (MCDC) where he was receiving treatment for chemical dependency. The State agreed to produce O'Donnell for an interview on October 3, 1996. On the date scheduled for the interview, the State advised Sweet that O'Donnell had been absent from MCDC for approximately seven days, and that his whereabouts were unknown.

¶13 Sweet moved to dismiss the information filed against him based upon his belief that the State negligently suppressed evidence related to the confidential informant. On October 8, 1996, the District Court denied Sweet's motion to dismiss.

¶14 A trial was held on October 8 and 9, 1996. Sweet moved for a directed verdict at the close of the State's case. The District Court denied Sweet's motion. A jury found Sweet guilty of two counts of criminal sale of dangerous drugs in violation of § 45-9-101, MCA (1995). On December 13, 1996, the District Court sentenced Sweet to two concurrent ten-year sentences at the Montana State Prison.

## ISSUE 1

¶15 Did the District Court err when it denied Sweet's motion to dismiss based on the State's alleged negligent suppression of evidence?

¶16 On appeal, Sweet argues that because the State's proof depended upon the testimony of its confidential informant, minimal observations of Stradinger, and two poor-quality tape recordings of the alleged drug sale, the availability of the confidential informant was critical. Sweet contends that the jury must be able to observe the confidential informant's demeanor

5

and evaluate his testimony. Sweet notes that the District Court found that O'Donnell "may be able to give testimony that is relevant to the defense of entrapment," and that O'Donnell was advised as early as November 30, 1995, that he may be a witness in this case. According to Sweet, the claim against him should have been dismissed with prejudice because the State's failure to keep track of O'Donnell constitutes a negligent suppression of important evidence and a violation of the District Court's order to produce the witness.

¶17 The State, on the other hand, contends that Sweet did not establish that O'Donnell's testimony would have raised a reasonable doubt about Sweet's guilt. It further argues that there is no evidence on the tapes, or anywhere else, that would suggest that Sweet lacked criminal intent, as required for the defense of entrapment, or was lured into committing a crime which he had no intention of committing. The State contends that the District Court correctly concluded that it did not negligently suppress evidence because it was not in direct control of the confidential informant and because both parties had the power to subpoena him. It further maintains that the District Court's previous determination that the confidential informant "may be able to give testimony that is relevant to the defense of entrapment" is not determinative for purposes of the motion to dismiss.

¶18 The grant or denial of a motion to dismiss in a criminal case is a question of law. *See State v. Hansen* (1995), 273 Mont. 321, 323, 903 P.2d 194, 195. Our standard of review is plenary; we review the decision to determine whether the conclusion of law is correct. *See Hansen*, 273 Mont. at 323, 903 P.2d at 195.

6

¶19 In *State v. McLeod* (1987), 227 Mont. 482, 487, 740 P.2d 672, 675, we held that in order to compel disclosure of a confidential informant the defendant must adduce "some evidence of entrapment before the government is called upon to disclose to the defendant the identify of an informant"(quoting *United States v. Sharp* (6th Cir. 1985), 778 F.2d 1182, 1187). In its order which required the State to disclose O'Donnell's identity, the District Court found that O'Donnell "may be able to give testimony that is relevant to the defense of entrapment," as is required by our holding in *McLeod*. However, as argued by the State, we conclude that this finding is not determinative of whether the District Court erred when it denied Sweet's motion to dismiss.

¶20 Although the District Court found that O'Donnell's testimony may be relevant to the defense of entrapment, the standard for materiality required for a reversal of a conviction is greater than for the disclosure of the identify of a confidential informant. In *State v. West* (1992), 252 Mont. 83, 826 P.2d 940, we held that in order to reverse a conviction the defendant must show that the lost or destroyed evidence had exculpatory value which would have changed the outcome of the trial. Specifically, we stated:

> [W]hen the State, due to negligence, loss, replacement, or destruction, is unable to produce certain physical evidence in the prosecution of the case, reversal of a conviction is not necessary where the actual objects were not vital to the defense, were not exculpatory in nature, and the result would not have been affected by their introduction.

*West*, 252 Mont. at 87, 826 P.2d at 943. We quoted the United States Supreme Court for the proposition that

7

> [w]hatever the duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*West*, 252 Mont. at 87, 826 P.2d at 943 (quoting *California v. Trombetta* (1984), 467 U.S. 479, 488-89, 104 S. Ct. 2528, 2534, 81 L. Ed. 2d 413, 422).

¶21 We agree with the State that Sweet did not establish that O'Donnell's testimony would change the outcome of the trial or raise a reasonable doubt about his guilt.

¶22 In *State v. Cannon* (1984), 212 Mont. 157, 167, 687 P.2d 705, 710, we set forth the following elements of entrapment: (1) criminal intent or design originating in the mind of the police officer or informer; (2) absence of criminal intent or design originating in the mind of the accused; and (3) luring or inducing the accused into committing a crime he had no intention of committing. There is a distinction between inducing a person to commit an unlawful act, and setting a trap to catch him or her in the execution of a criminal design of his or her own conception. *See Cannon*, 212 Mont. at 167, 687 P.2d at 710. Merely affording the defendant the opportunity or facility for committing an offense is not entrapment. *See* § 45-2-213, MCA.

¶23 Both transactions between Sweet and O'Donnell were recorded on tape. O'Donnell approached Sweet and inquired whether Sweet would sell him marijuana. Sweet then provided O'Donnell with marijuana in exchange for money. Sweet was merely presented

with the opportunity to commit the crime of criminal sale of dangerous drugs. There is no evidence on the tapes derived from the body wire to suggest that Sweet lacked criminal intent and was lured into committing a crime which he had no intention of committing.

¶24 Moreover, at the times Sweet sought an interview with him, O'Donnell was neither an employee of the Butte-Silver Bow Law Enforcement Agency nor the County Attorney's office and thus was not under the direct authority of the State. Unlike cases where physical evidence is lost or destroyed, the State cannot be held responsible for the unavailability of someone over whom it has no control.

¶25 Law enforcement agencies do have a responsibility to make reasonable efforts to secure the testimony of a confidential informant when his or her testimony becomes necessary. However, there was evidence from which the District Court could find that that was done in this case. Stradinger informed O'Donnell, in a confidential informant questionnaire, that O'Donnell may have to testify in court proceedings regarding the investigations in which he participated. O'Donnell read and signed the questionnaire. The State subpoenaed O'Donnell to testify approximately one week prior to the date set for trial and five days after the District Court ordered the disclosure of O'Donnell's identity and location. The State was simply unable to locate O'Donnell once he walked away from the treatment center.

¶26 Furthermore, we conclude that Sweet has not established prejudice from O'Donnell's absence. The entire transaction between O'Donnell and Sweet was recorded on tape for the

9

jury to hear. Stradinger, who was present to testify at trial, monitored both transactions, from start to finish, in person and through O'Donnell's body wire from a location near Sweet's residence. Based on these facts, we conclude that the District Court did not err when it denied Sweet's motion to dismiss based on suppression of evidence.

## ISSUE 2

¶27    Was there sufficient evidence to support the jury's verdict?

¶28    On appeal, Sweet contends that the evidence presented to the jury was inadequate to support the jury's verdict. He argues that because Stradinger and another law enforcement officer controlled the recording of the body wire, they were able to turn it on and off at their discretion and thereby seriously damage the integrity of the tapes. Sweet notes that Stradinger could not remember whether he had searched O'Donnell's vehicle prior to the November 11, 1995, transaction, that he allowed O'Donnell to stop at a convenience store to get change for the "buy money" just before the drug transaction, and that he neither observed O'Donnell while he was in the store nor searched his person or vehicle after he exited the store. Sweet adds that Stradinger himself testified that all of his original notations with respect to his contacts with O'Donnell are now destroyed.

¶29    Finally, Sweet maintains that the entire case turns on the credibility of O'Donnell, the one witness whom the State failed to produce. He concludes that once all of these facts are added up, the evidence is insufficient to establish proof beyond a reasonable doubt that Sweet committed the offenses charged.

¶30 The State maintains that the evidence establishes that Sweet sold marijuana to O'Donnell on two separate occasions and fully supports the conviction for the offense of criminal sale of dangerous drugs.

¶31 Recently, in *State v. Plenty Hawk* (Mont. 1997), 948 P.2d 209, 210, 54 St. Rep. 1102, 1103, we held that the standard of review for sufficiency of evidence to sustain a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. The elements of the crime of criminal sale of dangerous drugs are set forth in § 45-9-101(1), MCA (1995): "A person commits the offense of criminal sale of dangerous drugs if the person sells, barters, exchanges, gives away, or offers to sell, barter, exchange, or give away any dangerous drug, as defined in 50-32-101." Marijuana is defined in § 50-32-101, MCA, as a dangerous drug.

¶32 According to the record, the evidence in this case demonstrated that on the two occasions when Sweet sold marijuana to O'Donnell, O'Donnell was fitted with a body wire, he was searched for any contraband that might be on him prior to going to Sweet's residence, and he was given enough money to purchase a specified amount of drugs. During the transaction, a detective set up surveillance nearby and listened to and recorded the conversations that occurred inside Sweet's house. The detective watched O'Donnell go into Sweet's house with the money, he listened to O'Donnell clearly identify Sweet on the body wire and make the drug purchase, and he watched O'Donnell leave the house with the

marijuana. The jury heard the testimony of the detective, as well as the tape recordings of the drug transactions. After viewing this evidence in a light most favorable to the prosecution, we conclude that any reasonable trier of fact could have found, beyond a reasonable doubt, that Sweet sold marijuana to O'Donnell on two occasions.

¶33 Accordingly, we conclude that there was sufficient evidence to support the jury's verdict and that the trial court did not err when it denied Sweet's motion to dismiss.

_____
Justice

We Concur:

_____

_____

_____

Justices

12