No. 98-144

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 133

294 Mont. 509

982 P.2d 468

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

WAYNE J. BROWN,

Defendant and Appellant.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender Office, Helena, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Tammy K. Plubell, Assistant Attorney General, Helena, Montana; Deborah Kim Christopher, Lake County Attorney, Polson, Montana

Submitted on Briefs: January 7, 1999

Decided: June 14, 1999

Filed:

No

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1. A jury in the District Court for the Twentieth Judicial District, Lake County, convicted Defendant Wayne J. Brown (Brown) of two counts of sexual intercourse without consent and one count of attempted sexual intercourse without consent. The District Court sentenced Brown to forty years in prison on each of the counts of sexual intercourse without consent and to forty years in prison with twenty years suspended for the count of attempted sexual intercourse without consent. Brown appeals his convictions. We affirm.**

**¶2. Brown raises one issue on appeal, which we restate as follows:**

**¶3. Did the District Court err when it denied Brown's motion to dismiss which was based on the State's alleged suppression of evidence?**

### Factual and Procedural Background

**¶4. On September 15, 1995, the State charged Brown by Amended Information with two counts of sexual intercourse without consent and one count of attempted sexual intercourse without consent. The Amended Information alleged that Brown raped A. H. (who was his twelve-year-old stepdaughter) twice and attempted to rape her a third time in 1993 and 1994.**

**¶5. On September 7, 1995, Brown filed a list of potential witnesses which included A. H.'s mother, Lori Wessel (Wessel) and Wessel's address. On September 14, 1995, Brown appeared for trial but requested that the trial be postponed because Wessel refused to appear. As a result, the District Court rescheduled the trial and advised**

Brown "to advise the Court if he needs the Court to compel the witness to attend."

¶6. On May 24, 1996, Brown filed an amended list of witnesses which again included Wessel and her address. On May 30, 1996, prior to the commencement of the jury trial scheduled for that day, the State and Larry Nistler (Nistler), who was Brown's attorney at the time, met in chambers to settle preliminary matters. Nistler told the District Court that Brown had contacted Wessel and that Brown believed that Wessel would be at the trial.

¶7. Brown, however, did not appear for trial. Consequently, the Court revoked Brown's release on his own recognizance and issued an arrest warrant for Brown. On October 13, 1996, Brown was arrested. Trial was eventually rescheduled for May 8, 1997.

¶8. On March 3, 1997, Ben Anciaux (Anciaux), who was Brown's attorney at the time, and Lake County Attorney Robert Long (Long) interviewed A.H. by telephone. A.H. indicated during this interview that she knew how to contact Wessel. Anciaux asked A.H. for Wessel's telephone number. A.H., however, refused to give Wessel's telephone number to Anciaux. Notwithstanding, Anciaux continued to ask A.H. for Wessel's number. Consequently, Long told Anciaux to stop asking A.H. about how to contact Wessel. Long also told Anciaux that he would give Anciaux Wessel's telephone number after the interview. Long explained at the hearing on this matter that A.H. did not want to give Anciaux information concerning Wessel's whereabouts and that he told Anciaux to stop asking A.H. for that information because he thought that A.H. might hang up the telephone and, thus, end the interview.

¶9. Despite his pledge to give Anciaux Wessel's telephone number after the interview with A.H., Long did not give Anciaux Wessel's phone number and, on April 14, 1997, Long told Anciaux that he would not give Anciaux Wessel's telephone number. Consequently, on April 15, 1997, Brown filed a motion to compel the State to give him Wessel's address and telephone number. On April 22, 1997, the State filed a response to Brown's motion to compel wherein it stated that it would not call Wessel as a witness in its case-in-chief, stated that neither it nor A.H. had an address for Wessel, and gave Wessel's last known telephone number. However, on that same day, Long told Anciaux that Wessel was no longer at the telephone number which the State provided in its response to Brown's motion to compel. Long stated at the hearing on this matter that he did not include Wessel's number in the State's

response to Brown's motion to compel because of Brown's motion to compel; instead, Long stated that he included Wessel's number because of Anciaux's first request for the number and that it was a coincidence that he gave Anciaux Wessel's number after Brown filed his motion to compel. On April 30, 1997, the Court granted Brown's Motion to Compel and told Brown that he may file a motion for sanctions.

¶10. On April 30, 1997, Brown filed a Motion for Sanctions against the State because of its failure to comply with the court's discovery orders. Brown asserted that the State violated §§ 46-15-322(1)(a) and (e), and 46-15-327, MCA, by not providing Wessel's current address or telephone number. Brown asserted that the State had "led [him] on" and that the State knew that Wessel was a material witness for the defense. Brown argued that the State

violated his right to due process of law by withholding Wessel's telephone number. Brown asserted that he could not prepare or present a defense and, therefore, that the court should dismiss the charges against him or, alternatively, preclude the State from calling A.H. as a witness and the State from introducing her statements through other witnesses.

¶11. On May 12, 1997, the District Court held a hearing on Brown's motion to impose sanctions on the State. Brown's half-sister, Yvonne St. Dennis (St. Dennis), testified that she had been friends with Wessel for seven or eight years and that she knew A.H. St. Dennis also testified that Wessel told her that A.H. had accused three or four of Wessel's other boyfriends of molesting her and that A.H. had also alleged that she had been inappropriately touched by her stepbrother. In addition, St. Dennis testified that Wessel stated that she did not believe A.H.'s accusations and that A.H. had withdrawn her accusation against Brown.

¶12. On May 21, 1997, the District Court issued an Order which, in effect, denied Brown's motion for sanctions but stated that the court would favorably consider a six-month continuance so that Brown could locate Wessel. Brown subsequently moved the court for a continuance. On June 12, 1997, the District Court granted Brown's motion for a continuance and ordered that the trial be rescheduled no earlier than January 1, 1998. Thereafter, the District Court scheduled the trial for January 8, 1998.

¶13. On August 11, 1997, the District Court issued a Material Witness Warrant for

Wessel. On January 7, 1998, Brown renewed his motion for sanctions and argued that, since the Material Witness Warrant had not been served upon Wessel, he could not defend himself and that the State violated his right to due process of law by not giving him information regarding Wessel's whereabouts. The District Court denied this motion.

¶14. Trial commenced on January 8, 1998. The jury found Brown guilty on each count charged. On January 21, 1998, the District Court sentenced Brown to forty years in prison on each of the counts of sexual intercourse without consent and to forty years in prison with twenty years suspended for the count of attempted sexual intercourse without consent. Brown appeals his convictions.

## Standard of Review

¶15. The grant or denial of a motion to dismiss in a criminal case is a question of law. *State v. Sweet*, 1998 MT 30, ¶ 18, 287 Mont. 336, ¶ 18, 954 P.2d 1133, ¶ 18 (citing *State v. Hansen* (1995), 273 Mont. 321, 323, 903 P.2d 194, 195). Our review is plenary; we review the decision to determine whether the lower court's conclusion of law is correct. *Sweet*, ¶ 18 (citing *Hansen*, 273 Mont. at 323, 903 P.2d at 195).

## Discussion

¶16. *Did the District Court err when it denied Brown's motion to dismiss which was based on the State's alleged suppression of evidence?*

¶17. Brown maintains that the State violated his state and federal constitutional rights to due process of law by impeding his investigation and efforts in preparing a defense. Brown first asserts that the State violated his right to due process of law by hindering and interfering with his access to and interview with A.H. The State, however, contends that this issue is not properly before this Court because Brown raised it for the first time on appeal.

¶18. In response, Brown concedes that his main argument in District Court was that the prosecution interfered with his attempts to contact Wessel. Nevertheless, Brown asserts that the record shows that the prosecutor also controlled the access to and the interview with A.H. Since he generally asserted in District Court that the prosecution

hindered his ability to prepare a defense and since this Court's standard of review is plenary, Brown maintains on appeal that this Court should review all of the evidence which he presented to the District Court regarding whether the State violated his right to due process of law by hindering or interfering with his efforts to prepare a defense.

¶19. This Court will not address issues or theories raised for the first time on appeal. *State v. Schaff*, 1998 MT 104, ¶ 26, 288 Mont. 421, ¶ 26, 958 P.2d 682, ¶ 26 (citing §§ 46-20-104(2) and -701(2), MCA; and *State v. Woods* (1997), 283 Mont. 359, 372, 942 P.2d 88, 96-97). See also *State v. Robbins*, 1998 MT 297, ¶ 56, 971 P.2d 359 ¶ 56, 55 St. Rep. 1213, ¶ 56 (citing *State v. Huerta* (1997), 285 Mont. 245, 260, 947 P.2d 483, 492) (stating that "[c]laims that constitutional rights have been violated cannot, in the absence of plain error, be raised for the first time on appeal.").

¶20. In the instant case, the record shows that Brown did not argue in District Court that the State violated his rights to due process of law by either hindering or interfering with his access to or interview with A.H. Instead, the record shows that he only raised the theory that the State violated his rights to due process of law by hindering or interfering his access to Wessel. Thus, although Brown generally raised the issue in District Court of whether the State violated his right to due process of law by interfering with his attempt to prepare a defense, he did not raise the theory in District Court that the State violated his right to due process of law by either hindering or interfering with his access to or interview with A.H. Thus, we will not address the merits of this argument on appeal.

¶21. Moreover, we reject Brown's argument concerning our standard of review because our standard of review only applies to those issues which we review on the merits. See generally Kelly Kunsch, *Standard of Review (State and Federal): A Primer*, 18 Seattle U. L. Rev. 11, 13-14 (1994). Hence, even though our standard of review is plenary, it is only plenary over those issues and theories which we review on the merits--i.e., those issues and theories that were raised in district court. Thus, since Brown did not raise the theory that the State violated his rights to due process of law by hindering or interfering with his access to and interview with A.H. in District Court, we will not address the merits of this theory on appeal even though our standard of review is plenary.

¶22. In sum, Brown did not raise the theory that the prosecution violated his right to

due process of law by either hindering or interfering with his access to or interview with A.H. until this appeal. Consequently, we will not address the merits of these arguments.

¶23. Brown next contends that the State violated his rights to due process of law by preventing his defense counsel from obtaining information regarding how to contact Wessel, whom Brown claims was a potential exculpatory witness. The State maintains that it did not withhold exculpatory evidence from Brown and that, even if it was responsible for failing to procure Wessel's testimony for trial, Wessel's testimony would not have changed the outcome of the trial. We agree with the State.

¶24. In *State v. Patton* (1996), 280 Mont. 278, 930 P.2d 635, Patton, who was convicted of deliberate homicide, argued that the State denied him his rights to due process of law and a fair trial by suppressing exculpatory evidence by failing to "preserve" as a witness a person whom Patton claimed was a suspect. *Patton*, 280 Mont. at 283, 930 P.2d at 638. We noted that

[I]t is well settled that while a criminal defendant has a constitutional right to obtain exculpatory evidence and that the denial of such right is a denial of due process, this right is only a personal right to obtain exculpatory evidence. It does not require that police officers take initiative or even assist in procuring evidence of behalf of a defendant.

*Patton*, 280 Mont. at 284, 930 P.2d at 638-39 (quoting State v. Sadowski (1991), 247 Mont. 63, 79, 805 P.2d 537, 547). We also stated that

[O]nly a deliberate or intentional suppression of exculpatory evidence is a per se violation of due process. To amount to a violation of due process, negligently suppressed evidence must be material and of substantial use, vital to the defense, and exculpatory.

*Patton*, 280 Mont. at 285, 930 P.2d at 639 (quoting Sadowski, 247 Mont. at 79, 805 P.2d at 547).

¶25. Patton was unable to secure the presence of the person whom he claimed was a suspect at either a deposition or the trial. However, since Patton did not assert that the State took affirmative steps to insure that the person whom Patton claimed was a suspect would be unavailable for trial nor that the State impeded his efforts to investigate and serve this person with a subpoena, we concluded that the State did

not suppress exculpatory evidence and, thus, that it did not violate Patton's rights to due process and a fair trial. *Patton*, 280 Mont. at 285, 930 P.2d at 639.

¶26. Likewise, in *State v. Sweet*, 1998 MT 30, 287 Mont. 336, 954 P.2d 1133, Sweet argued that the charges against him should have been dismissed because the State failed to keep track of a confidential informant who may have been able to provide testimony relevant to the defense of entrapment. Sweet argued that the State's failure to keep track of the confidential informant constituted a negligent suppression of important evidence and violated the district court's order to produce the confidential informant. *Sweet*, ¶ 16.

¶27. The State, however, contended that Sweet did not establish that the confidential informant's testimony would have raised a reasonable doubt as to Sweet's guilt. Moreover, the State contended that it did not negligently suppress evidence because it was not in direct control of the confidential informant and because both parties had the power to subpoena him. Finally, the State maintained that the district court's determination that the confidential informant may have been able to give testimony relevant to the defense of entrapment was not determinative for purposes of a motion to dismiss. *Sweet*, ¶ 17.

¶28. In *Sweet*, we reaffirmed our holding in *State v. West* (1992), 252 Mont. 83, 826 P.2d 940, that in order to reverse a conviction a defendant must show that the lost or destroyed evidence had exculpatory value which would have changed the outcome of the trial. *Sweet*, ¶ 20. We quoted from *West* wherein we stated:

[W]hen the State, due to negligence, loss, replacement, or destruction, is unable to produce certain physical evidence in the prosecution of the case, reversal of a conviction is not necessary where the actual objects were not vital to the defense, were not exculpatory in nature, and the result would not have been affected by their introduction.

*Sweet, ¶ 20 (quoting West, 252 Mont. at 87, 826 P.2d at 943). We also quoted the United States Supreme Court's decision in California v. Trombetta (1984), 467 U.S. 479, 488-89, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 422, for the proposition that*

[W]hatever the duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be

of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Sweet, ¶ 20 (citing West, 252 Mont. at 87, 826 P.2d at 943).*

**¶29. We then held that Sweet did not establish that the confidential informant's testimony would have changed the result of the trial or raised a reasonable doubt about his guilt. *Sweet*, ¶ 21. We also noted that the confidential informant was neither an employee of the local law enforcement agency nor of the particular county attorney's office and "thus was not under the direct authority of the State." *Sweet*, ¶ 24. Moreover, we stated that "the State cannot be held responsible for the unavailability of someone over whom it has no control." *Sweet*, ¶ 24.**

**¶30. In the instant case, Brown has not shown that Wessel's testimony would have been exculpatory. In fact, Brown concedes in his reply brief that Wessel's testimony was only**

**"potentially" exculpatory. In addition, the State did not take any affirmative steps to insure locating Wessel, it did not impede his efforts to find Wessel. See *Patton*, 280 Mont. at 285, 930 P.2d at 639. Moreover, we agree with the State that Brown did not establish that Wessel's testimony would have changed the outcome of the trial. Wessel was not a direct witness to any of the alleged criminal activity and it is unclear what her testimony would have been. Finally, the State cannot be held responsible for the unavailability of Wessel, who, like the confidential informant in *Sweet*, is someone over whom the State had no control. See *Sweet*, ¶ 24.**

**¶31. Accordingly, under the facts of the instant case, we conclude that the State did not violate Brown's rights to due process of law and, thus, that the State did not engage in conduct that warranted dismissal of the charges.**

**¶32. Affirmed.**

/S/ JAMES C. NELSON

We Concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER