No. 04-463

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 145

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

NANCY LYNN SMITH,

        Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Seventeenth Judicial District,
                      In and for the County of Blaine, Cause No. DC 2003-03
                      The Honorable John C. McKeon, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Carl S. White, Attorney at Law, Havre, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; Joslyn M. Hunt, Assistant
                Attorney General, Helena, Montana

                Yvonne Laird, Blaine County Attorney; Chinook, Montana


_____

           Submitted on Briefs:  September 13, 2005

                     Decided:  June 27, 2006

Filed:

             _____
                     Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Nancy Lynn Smith (Smith) appeals her conviction of criminal distribution of dangerous drugs in the Seventeenth Judicial District Court, Blaine County. We affirm.

¶2 The issue presented is whether the District Court erred in denying Smith's motions for a directed verdict at the close of the State's case and for a new trial, because she was entrapped as a matter of law.

¶3 On December 14, 2002, informant Levi Morin (Morin), under the direction of law enforcement, went to Smith's house to make a controlled drug purchase. Smith sold him two marijuana cigarettes for $10.

¶4 The State also alleged that on December 16, 2002, Smith sold to Morin, again acting at the direction of law enforcement, three codeine pills for $5.

¶5 At trial, following the presentation of the State's evidence, Smith moved for a directed verdict arguing that she was induced into making the charged dangerous drug sales; that is, she was entrapped as a matter of law. The District Court found that the cross-examination of the State's witnesses presented evidence that Smith was induced to make the sales, and thus concluded that the State would be required to prove that she was not so induced, beyond a reasonable doubt. The District Court also concluded that the evidence could support a verdict that Smith was predisposed to make the sales, and thus denied her motion for a directed verdict.

¶6 The jury found Smith guilty of selling the two marijuana cigarettes and not guilty of selling the codeine pills. Smith filed a motion for new trial based on her entrapment arguments, which the District Court denied. This appeal followed Smith's sentencing.

2

¶7 We review a district court's denial of motions for both a directed verdict of acquittal and a new trial for abuse of discretion. *State v. Ray*, 2003 MT 171, & 34, 316 Mont. 354, & 34, 71 P.3d 1247, & 34; *State v. Aakre*, 2002 MT 101, & 8, 309 Mont. 403, & 8, 46 P.3d 648, & 8. "A directed verdict is appropriate when there is no evidence upon which a jury could base a guilty verdict. No abuse of discretion occurs if, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Ray*, & 34. We review a district court's conclusions of law *de novo* for correctness. *Ray*, & 34.

¶8 The entire transaction in question took between three and four minutes. Understandably, pursuant to Rule 404(b), M.R.Evid., there was no evidence that Smith was in the marijuana business. Morin and Smith both testified at trial as to what happened during the transaction. Morin testified as follows:

> Q: What did you do when you entered the residence?
> A: Asked Nancy if I could buy some marijuana or pills from her.
> Q: Did she respond to that?
> A: Yes, ma'am.
> Q: What was her response?
> A: I bought two joints from her.
> . . . .
> Q: And who retrieved the joints from her purse?
> A: Nancy did, ma'am.
> Q: What did she do with them after she retrieved them from her purse?
> A: Gave them to me, and I exchanged the money with her.
> Q: And how much money did you give her?
> A: $10.00.
> Q: What did you do at that point?
> A: Not to—I don't really remember that much. I just remember buying them and telling her that I'd come back later on, and I left the residence.

¶9 Smith testified as follows:

Q: Okay. Tell the jury, if you would, what transpired from the time Levi came to the door?

A: Well, when Levi came to the door I was in bed, which is in the living room. I was in front of the TV, and Kenny answered the door. I was half asleep. I wanted to see who he was talking to. I sat up. Levi was looking for marijuana, and he wanted joints, specifically, and I did not know what to tell him about where to go to get it, who to call, and Kenny said that he had some and he needed money. He had on a quilted flannel shirt, and he had a chew can, or whatsoever that stuff guys put in their lip, but it was empty, and there was a bag with marijuana in it, and that's where Levi got his marijuana from.

. . . .

Q: Okay. So did you have anything to do with what—did you have any involvement with the sale of the marijuana?

A: No, I did not. I did not receive money. I don't even know if Kenny received money for what he gave Levi.

Q: Did you touch the drugs?

A: Yes, I touched the drugs. I am the one who rolled the two joints out of Kenny's bag, and I did hand them to Levi, but I never took any money, and I didn't see any money either.

Smith did not testify that Morin pleaded, begged, or coerced her into selling drugs to him.

¶10 Section 45-2-213, MCA, provides:

A person is not guilty of an offense if his conduct is incited or induced by a public servant or his agent for the purpose of obtaining evidence for the prosecution of such person. However, this section is inapplicable if a public servant or his agent merely affords to such person the opportunity or facility for committing an offense in furtherance of criminal purpose which such person has originated.

¶11 Smith claims that because Morin came to her house for the purpose of purchasing marijuana, and there is no evidence that she was predisposed to make the sale, there can be no doubt that the illegal sale originated with law enforcement. Thus, entrapment as a matter of law is established.

¶12 We have previously explained the difference between providing the opportunity to commit an offense, and being induced into committing a crime:

4

Entrapment occurs only when the criminal intent of design originates in the mind of the police officer or informer and not with the accused, and the accused is lured or induced into committing a crime he had no intention of committing. Only when the criminal design originates, not with the accused, but in the mind of government officers and the accused is by persuasion, deceitful representations, or inducement, lured into the commission of a criminal act, can a case of entrapment be made out. In short, there is a controlling distinction between inducing a person to do an unlawful act and setting a trap to catch him in the execution of a criminal design of his own conception. The fact that the Yellowstone County sheriff's office afforded the opportunity or facility for the commission of the offense, does not come within the entrapment rule. In this class of offenses, usually committed secretly, it is difficult if not almost impossible to secure the evidence necessary to convict by any other means than by the use of decoys. Certainly, there can be no objection to their use if the officers do not by persuasion, deceitful representations or inducement, lure a person who otherwise would not be likely to break the law, into a criminal act.

*State v. Karathanos* (1972), 158 Mont. 461, 470, 493 P.2d 326, 331.

¶13 In *State v. Harney* (1972), 160 Mont. 55, 499 P.2d 802, the defendant agreed to sell drugs to an informant. Law enforcement officials set up surveillance of the sale and arrested the defendant after the sale. *Harney*, 160 Mont. at 57, 499 P.2d at 803. We rejected the defendant's allegation of entrapment because, rather than "plead, beg, or coerce the [defendant] into selling," the informant "merely asked [the defendant] if he could furnish him with some drugs." *Harney*, 160 Mont. at 60, 499 P.2d at 805. We explained that a "casual offer to buy is not sufficient to avail the appellant with the defense of entrapment." *Harney*, 160 Mont. at 60, 499 P.2d at 805.

¶14 Similarly, in *State v. Sweet*, 1998 MT 30, 287 Mont. 336, 954 P.2d 1133, law enforcement officers used an informant to conduct two separate controlled drug purchases. *Sweet*, &¶ 5, 8-9. We rejected the defendant's allegation of entrapment,

because:

> [The informant] approached Sweet and inquired whether Sweet would sell him marijuana. Sweet then provided [the informant] with marijuana in exchange for money. Sweet was merely presented with the opportunity to commit the crime of criminal sale of dangerous drugs. There is no evidence on the tapes derived from the body wire to suggest that Sweet lacked criminal intent and was lured into committing a crime which he had no intention of committing.

*Sweet*, & 23.

¶15 The present case is analogous to both *Harney* and *Sweet*. We conclude that the record of the sale could be interpreted by a jury to show that Morin merely presented Smith with the opportunity to sell him marijuana, by inquiring if she was willing to do so, and it was Smith who took that opportunity.

¶16 In this instance, after hearing the adroit arguments of her counsel, the District Court determined that a jury might find from the evidence that Smith was induced into the criminal transaction. The District Court made this determination even though the short conversation neither shows efforts by Morin to persuade her to make the sale, nor reflects deceitful representations or other inducement to lure her into committing the criminal act. Thus, the District Court, in accord with *State v. Brandon* (1994), 264 Mont. 231, 242, 870 P.2d 734, 740, instructed the jury that it was the State's burden to prove beyond a reasonable doubt that Smith was predisposed to violate the law before the State intervened. The District Court's determination that the circumstances of the sale could be interpreted to mean that Smith was induced into making the sale, and therefore imposing an additional burden of proof on the prosecution, does not translate into a requirement

that Smith was entrapped as a matter of law. We conclude that the District Court did not err in sending the case to the jury.

¶17 Smith also argues that this Court must, as a matter of law, determine that the police cannot send an informant into someone's home to purchase a small amount of marijuana, and by that sale transform the misdemeanor offense of possession of marijuana, § 45-9-102(2), MCA, into the felony offense of distribution of dangerous drugs, § 45-9-101, MCA. It is within the province of the legislature to distinguish between criminal offenses and to establish punishments. *State v. Webb*, 2005 MT 5, ¶ 37, 325 Mont. 317, ¶ 37, 106 P.3d 521, ¶ 37.

¶18 Affirmed.

/S/ JOHN WARNER


We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE